**STATE of Iowa, Plaintiff-Appellee,**

v.

**Raymond (NMN) SHEPPARD, Jr., Defendant-Appellant.**

**No. 66710.**

Court of Appeals of Iowa.

Aug. 26, 1982.

James F. Whalen of Dunbar & Dunbar, Waterloo, for defendant-appellant.

Michael K. Jordan, Asst. Atty. Gen., for plaintiff-appellant.

PER CURIAM.

Defendant Ray Sheppard, Jr., appeals from his conviction for burglary in the first degree in violation of Iowa Code § 713.2 (1981). We reverse and remand for a new trial.

He asserts (1) that there was insufficient independent evidence of a conspiracy to support the admission of hearsay statements supposedly made by an alleged accomplice; (2) that statements made by the alleged accomplice to police the day after the crime was committed were not admissible under the co-conspirator exception to the hearsay rule; (3) that the admission of these statements violated defendant's right to confrontation when the declarant was unavailable for cross-examination; (4) that the warrantless seizure of his clothing violated his fourth amendment rights; (5) that the evidence was insufficient to identify defendant as the perpetrator of the burglary; and (6) that evidence of defendant's drug use during the prior year should not have been admitted.

From the evidence presented, the jury could have found that on November 29, 1979, John Baker and Steve and Judy Miller were negotiating a drug sale in Baker's home in Waterloo. The transaction was interrupted when an armed and masked intruder came into the house. Both the intruder and Baker fired shots, Baker was hit, and the intruder fled. Very shortly after this incident defendant was admitted into a nearby hospital with gunshot wounds claimed to have been received outside a tavern from two unknown assailants.

Baker and the Millers did not know whether or not the intruder had been shot, could not identify him because of the mask, but did know that he was wearing a three piece dark-colored suit. The hospital staff notified the police that a gunshot victim had come to the hospital, and when police arrived, hospital personnel gave the police defendant's shirt, vest and suitcoat which had been packaged by hospital personnel prior to being viewed by the police officers. The police apparently helped remove the rest of defendant's clothing from his body shortly thereafter. When the police showed Baker and the Millers defendant's clothing that night, they identified it as similar in appearance to the clothing the masked intruder was wearing. Defendant was subsequently arrested and charged with first degree burglary.

Defendant was tried and convicted in a jury trial, but a motion for a new trial was granted when jury misconduct was shown. A second trial was held, and defendant was again convicted.

I. We look first at the testimony of James Harrington. His testimony is crucial to the State's case, because as the trial court noted, "This is so far the only guy that really says something about the defendant. Everything else is pretty much circumstantial and conjecture. This is the one guy that says somebody told me he was there." Without Harrington's testimony linking defendant directly to the burglary, the strength of the State's case rests on the largely circumstantial evidence presented.

Over defense counsel's objections, Harrington was permitted to testify that on the night of the crime one Ace Redd came to him and stated that he and the defendant had attempted to steal drugs from a white person, and that defendant had been shot in the process. Harrington also testified that Redd asked him to provide an alibi and that he helped Redd that night by driving defendant's car to the defendant's house. Defendant argues that Harrington's testimony is inadmissible because there is not sufficient independent evidence of the conspiracy between Redd and the defendant to permit Harrington to testify about the conversation under the co-conspirator exception to the hearsay rule.

■ If there were sufficient independent proof of the conspiracy, then anything said by Redd during the course of and in furtherance of the conspiracy would be admissible against the defendant. *State v. Kidd,* 239 N.W.2d 860, 864 (Iowa 1976), citing *State v. Blyth,* 226 N.W.2d 250, 269 (Iowa 1975). However, in the instant case, Harrington's hearsay testimony is the only proof of the conspiracy. Ace Redd never testified at trial, and the defendant certainly did not testify about the existence of a conspiracy. Proof of a conspiracy has to be with evidence other than the extra-judicial declarations of a co-conspirator. *See* 22A C.J.S. *Criminal Law* § 758 (1961); and *United States v. Brierly,* 501 F.2d 1024, 1028, *cert. denied,* 419 U.S. 1052, 95 S.Ct. 631, 42 L.Ed.2d 648 (1974).

■ The State argues that there was substantial evidence of a conspiracy in that Harrington had some knowledge of the night's events, was asked to provide an alibi, and never went to the police until later. Yet everything the State points to stems from Redd's statements and thus the co-conspirator's words are essentially *the* proof of the conspiracy. The other evidence pointed to by the State does not, in our estimation, amount to "substantial and independent" proof of the conspiracy. However nebulous the concept of "substantial proof" can be at times, absent Redd's statements to Harrington, there is not substantial proof of a conspiracy in this case. Thus, we hold that Harrington's testimony about Redd's conversation with him is inadmissible and the trial court committed reversible error in admitting such testimony. Because the case must be retried as a result of this error, we also consider certain other claims of error for the guidance of the district court.

■ II. Defendant also argues that statements made by Ace Redd to Detective Newton on the day after the burglary are inadmissible. In light of our finding that there was insufficient independent evidence of a conspiracy, we agree that this hearsay testimony is also inadmissible under the co-conspirator exception to the hearsay rule.

III. Hospital personnel removed defendant's shirt, vest and suitcoat from him when he was receiving emergency treatment for his gunshot wounds. These articles of clothing were packaged before the police viewed them and later turned over to the police when they arrived at the emergency room. Though there is conflicting testimony on who removed defendant's pants and shoes, it appears that both hospital personnel and police officers removed these articles of clothing from the defendant.

Defendant asserts that the warrantless search and seizure of his clothing by the Waterloo policemen violated his fourth amendment right to be free from unreasonable searches and seizures. The State argues that there is no fourth amendment question presented because private individuals took defendant's coat, shirt and vest, and it was harmless error for the court to have admitted the rest of defendant's clothing which the police did help seize. The State further contends that when police officers accepted the clothing from the hospital staff, this otherwise private seizure was not transformed into state action, and defendant's fourth amendment protections were not triggered even at that point.

■ Our analysis of this issue begins with the conclusion that simply because private individuals such as the hospital staff took defendant's clothing, fourth amendment protections can still be involved if there is a significant government participation in the incident which violates defendant's reasonable expectation of privacy. *State v. Carter*, 267 N.W.2d 385, 386 (Iowa 1978). In the instant case, the evidence indicates that it was routine procedure for the hospital staff to call the police whenever a shooting or cutting victim entered the hospital for treatment and routinely hand over to the police officers the clothing of the victim. The procedures employed here, as in *State v. Carter*, appear to be part of an overall plan enacted with police cooperation, advice and planning. Thus the State cannot now argue that because private individuals seized some of defendant's clothing, it was a private rather than a governmental intrusion.

■ We think there was sufficient police involvement in the search and seizure of defendant's clothing which had been packaged that the police should have first obtained a warrant before seizing this property. Unless we can find that this warrantless search and seizure of defendant's clothing falls under one of the recognized exceptions to the warrant requirement, we must exclude the clothing as having been obtained in violation of defendant's constitutionally protected right. The burden of proof is upon the party seeking to apply the exception to prove its applicability. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971).

■ The State claims the seizure was proper under the "plain view" exception. There are three *Coolidge* prerequisites for a valid plain view seizure. First, there must be a prior justification for the intrusion into the otherwise constitutionally protected area. Second, the incriminating nature of the object seized must be immediately apparent. And third, the discovery of the "plain view" evidence must be inadvertent. We first note that Iowa Code §§ 147.-111, .113 required the hospital personnel to report to the sheriff that a gunshot victim had entered the hospital. Arguably this section justifies police intrusion into ·the emergency room where defendant was being treated, and satisfies the first prerequisite.· The State also argues that the incriminating nature of the clothing which the police seized was immediately apparent. This is not so because the items were packaged.

We also believe that the discovery of defendant's clothing was not inadvertent. We quote with approval the Annotation at 29 L.Ed.2d 1067, 1075:

If law enforcement officers anticipate before going to a particular place that they will find certain incriminating evidence there, and if there is no substantial danger that taking the time to obtain a valid warrant will result in the disappearance of the evidence, the officers must obtain a valid warrant authorizing the seizure of such evidence, exigent circumstances justifying the failure to obtain a valid warrant in such a situation are lacking, and the mere fact that the evidence which the officers anticipated seizing at the particular place turns out to be in plain view when they arrive there cannot justify

their seizure of the evidence without their first having obtained a valid warrant.

We believe that in this case the police officers *expected* to seize defendant's clothing, as was evidenced by the routine hospital procedure employed by the hospital staff in packaging the defendant's clothing for the police officers and then transferring it over to them. Since the officers evidently expected to seize the clothing from defendant, the State cannot use the "plain view" exception to validate the warrantless search and seizure.

Neither can the State justify the seizure on the basis of exigent circumstances. "Exigent circumstances sufficient to justify a search and seizure without a warrant usually include danger of violence and injury to the officer or others; risk of the subject's escape; or the probability that, unless taken on the spot, evidence will be concealed or destroyed." *State v. Jackson,* 210 N.W.2d 537, 540 (Iowa 1973). Defendant was in the hospital emergency room surrounded by hospital personnel and police officers. He was in pain and was being treated for his wounds. His clothing was bulky and not easily disposed of by defendant. Under these circumstances, we give little credence to the State's argument that exigent circumstances precluded the need for the officers to obtain a warrant before they seized defendant's clothing from him.

A warrant should have been obtained by the Waterloo police officers before they seized defendant's clothing. Such failure renders the clothing inadmissible in evidence. This does not prevent the officers or others from describing in their testimony the items of clothing which were lawfully observed prior to the unlawful seizure.

IV. The State cross-examined defendant both about his use of cocaine on the night of the burglary, and about his drug use during the year preceding the burglary. The defendant notes that it was proper to examine defendant regarding that night's drug use under *State v. Ivory,* 247 N.W.2d 198, 204 (Iowa 1976), but he argues that allowing the State to examine defendant about his other drug use was error because it permitted the jury to hear evidence of other crimes.

There are clearly stated exceptions to the rule that evidence of other crimes is inadmissible. *See State v. Cott,* 283 N.W.2d 324, 326 (Iowa 1979). One of these exceptions is evidence which tends to prove motive. The State argues that the disputed testimony is admissible under this exception. We agree. The victims testified that there were drugs present at the home, and that a drug dealer lived in the home which was burglarized. Under these circumstances, if the jury knew that defendant had a history of consistent drug use, they could find that defendant's actions were indeed motivated by his drug use. We conclude that the probative value of the evidence outweighed the possible prejudicial effects. The balancing of these considerations requires a great deal of individual judgment. *State v. Cott,* 283 N.W.2d at 329. We believe the trial court's precautions and deliberations before allowing this information to come in shows a reasoned and rational approach. The defendant has failed to show that the trial court's action in this matter was "unreasonable in the light of attendant circumstances." *State v. Cott,* 283 N.W.2d at 329, quoting *State v. Gartin,* 271 N.W.2d 902, 910 (Iowa 1978).

V. We have considered defendant's contentions that he should have received a directed verdict of acquittal and find said claims to be without merit. Defendant is, however, entitled to a new trial for the reasons herein stated.

REVERSED AND REMANDED FOR A NEW TRIAL.