STATE of Iowa, Appellee,

v.

Bruce Allen HATTER, Appellant.

No. 68839.

Supreme Court of Iowa.

Dec. 21, 1983.

Charles L. Harrington, Appellate Defender, and Patrick R. Grady, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Steven M. Foritano, Asst. Atty. Gen., and Harold Denton, Asst. County Atty., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McGIVERIN, LARSON and CARTER, JJ.

McGIVERIN, Justice.

Defendant Bruce Allen Hatter appeals from his conviction of first-degree kidnapping in violation of Iowa Code sections 710.1–.2 (1981), for the kidnapping and sexual abuse on December 1, 1981, of complainant, Deborah, contending, *inter alia,* that the trial court committed reversible error in failing to suppress the fruits of his warrantless arrest, on an unrelated charge, that was effected by means of an illegal entry into his home. We conclude that the warrantless arrest of defendant in his home was improper due to the nonconsensual entry of the arresting officers and the absence of exigent circumstances to otherwise justify entry without consent. The evidence obtained as a result of the warrantless arrest also must be suppressed because there did not exist any intervening events of significance which would purge the taint of the unlawful entry. We therefore reverse and remand the case for a new trial.

Without a search warrant or arrest warrant, the police entered defendant's home and arrested him for the kidnapping and sexual abuse on March 31, 1982, of a young woman named Karen.

Subsequent to his arrest, Hatter was advised of his *Miranda* rights. Thereafter, he made oral inculpatory statements, signed a written confession, and relinquished a set of handcuffs with a key to the police. These items of evidence were then used by the State in the prosecution of the present case concerned with the kidnapping of another woman named Deborah. Defendant moved to suppress these items of evidence and the court overruled the motion.

I. *Unlawful entry.* The Supreme Court has held that the U.S. Const. amend. IV does not permit a *warrantless entry* into a suspect's home to *arrest* him or her on a routine felony charge unless an occupant has *consented to the entry* or *exigent*

*circumstances* are present. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

The Court in *Payton* recognized that an arrest warrant alone is sufficient to authorize the entry into a person's home to effect his arrest. The Court reasoned:

> If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.

*Payton*, 445 U.S. at 602–03, 100 S.Ct. at 1388, 63 L.Ed.2d at 660–61. *Accord State v. Luloff*, 325 N.W.2d 103, 105 (Iowa 1982) ("Possession of an arrest warrant alone is constitutionally sufficient for entry into a suspect's own residence to effect his arrest.").

Relying on this authority, the defendant filed a pretrial motion to suppress certain incriminating evidence bearing on the present case that was obtained by the police after his warrantless arrest, on an unrelated felony charge, in his home on April 1, 1982. The trial court (Judge Kilburg) overruled defendant's motion even though it found that the officer's entry of defendant's residence had been made without a search or arrest warrant and without consent. The court found that "exigent circumstances" existed which cured the warrantless and nonconsensual entry and resulting arrest. We disagree.

■ Defendant asserts a violation of constitutional safeguards. Our review, therefore, is de novo which permits an independent evaluation of the totality of the circumstances as shown by the entire record. *State v. Campbell*, 326 N.W.2d 350, 352 (Iowa 1982).

■ A. *Consent.* Our initial inquiry concerns the factual question of whether the arresting officers' entry of defendant's residence was consensual. We note that the State has the burden of proof to establish by the preponderance of the evidence that consent to enter was *voluntarily* given. *State v. Folkens*, 281 N.W.2d 1, 3 (Iowa 1979). The Supreme Court has held that "[t]his burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 548–49, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802 (1968).

■ The arresting officers, two detectives from the Cedar Rapids police department, testified that they had received consent to enter defendant's residence from defendant's brother. The brother testified, however, that he had not given consent to enter but had told the officers to wait at the door while he summoned the defendant who was taking a shower. In recognition of the trial court's ability to observe the witnesses while they were testifying and thus better judge their credibility, we will in this case grant the trial courts' findings of fact considerable deference. The trial court found:

> The brother of the defendant did not give *actual consent* to enter the premises and arrest the defendant, but neither did he deny the police officers access to the home. Entry was peaceable and no outrageous conduct by the officers was established.

(Emphasis added.)

■ Our findings on de novo review of the record concur with those of the trial court. We understand the court's finding that no "actual consent" was given to mean that consent to enter was not "voluntarily" given but rather was the result of "acquiescence to a claim of lawful authority."

We agree with the trial court that the detectives' entry was nonconsensual.

■ B. *Exigent circumstances.* A warrantless entry is presumptively unreasonable; thus, the burden is on the State to justify exigency in the initial entry. *State v. Luloff*, 325 N.W.2d at 105. The follow-

ing criteria are considered in determining whether exigency exists:

(1) a grave offense is involved;

(2) the suspect is reasonably believed to be armed;

(3) there is probable cause to believe the suspect committed the crime;

(4) there is strong reason to believe he is on the premises;

(5) there is a strong likelihood of escape if not apprehended; and

(6) the entry, though not consented to, is peaceable.

*Id.* Although important, these guidelines are not all-inclusive and all of them do not have to be satisfied for a finding of exigency. *Id.* at 106. The ultimate issue, however, is whether an *emergency* or *urgent need* for the warrantless entry existed. *State v. Holtz,* 300 N.W.2d 888, 893 (Iowa 1981). A warrant will be required unless an immediate major crisis in the performance of duty afforded neither time nor opportunity to apply to a magistrate. *Id.* We have found that exigent circumstances usually exist where there is danger of violence and injury to the officers or others; risk of the subject's escape; or the probability that, unless taken on the spot, evidence will be concealed or destroyed. *Luloff,* 325 N.W.2d at 105; *Holtz,* 300 N.W.2d at 893.

■ The events preceding the arrest of Hatter do not reflect the existence of exigent circumstances in that they do not suggest that an "emergency or urgent need" existed for the warrantless entry and arrest.

On April 1, 1982, the day of Hatter's arrest, the police were contacted at 9:00 a.m. by a young woman, Karen, who reported that she had been kidnapped and sexually assaulted the night before at approximately 9:00 p.m. During the morning hours, the victim was questioned by detectives in an attempt to create a composite of the perpetrator. The victim's car was searched because it had been used in the crime. A billfold not belonging to the victim was found in the search. The billfold contained a driver's license in the name of the defendant and the victim identified the picture on the license as being the perpetrator of the crime. During the course of making her statement, the victim described the perpetrator's vehicle, which she had observed, as being a small, blue car.

At noon, the detectives and the victim went out for lunch, taking twenty-five to thirty minutes.

After lunch, the detectives and the victim drove to the address they believed to be the perpetrator's residence. They observed a small, blue car that the victim said looked like the perpetrator's, although she could not make a positive identification.

Thereafter, the detectives took the victim home where they picked up certain physical evidence and then returned to the defendant's residence where they arrested him at approximately 3:00 p.m.

We fail to discern the presence of any exigency in the events leading up to defendant's arrest for the incident with Karen. They appear to amount to nothing more than a routine investigation of a felony.

There is nothing in the record to support a finding that defendant was attempting to escape or had planned to escape. Thus, there was not a strong likelihood that defendant would escape if not apprehended immediately.

Nor was this a case of officers being in hot pursuit of a suspect. Approximately twelve hours had passed between the commission of the offense and the victim's reporting of such offense to the police. Thus, the sense of emergency or urgency associated with an arrest made in hot pursuit was not present.

Furthermore, there was nothing in the record to suggest that a warrantless entry and arrest was necessary to prevent the concealment or destruction of evidence. The State contended in the trial court that the officers believed that the defendant must have been aware of the impending investigation and arrest because his wallet had been left at the scene of the crime.

This would be a convincing argument if the officers were attempting to make a warrantless arrest shortly after the commission of the crime. However, in view of the elapsed time between the crime and the arrest, a period of eighteen hours, the sense of urgency in preserving evidence had substantially subsided. If defendant was going to destroy evidence, or attempt to escape, because of the realization that his wallet had been left at the scene of the crime, he would surely have accomplished this end before the passage of eighteen hours.

The lack of exigency preceding the arrest of Bruce Hatter is best illustrated by the fact that after having obtained a positive identification of the defendant by the victim, the detectives took the victim out for a half-hour lunch. Under the circumstances we believe the detectives could have taken the additional short amount of time necessary to secure an arrest warrant. The record disclosed an admission by one of the detectives who said he routinely makes a felony arrest without an arrest warrant unless he cannot find the person to be arrested. Furthermore, the detectives were at the Hatter residence when the victim identified the "small, blue car." If they were really concerned about a potential escape, they would have made an immediate arrest instead of waiting several hours before returning to make the arrest.

The totality of the circumstances reveals that an emergency or urgent need did not exist, in connection with the incident involving Karen, for entering defendant's home without an arrest warrant and without consent. We therefore conclude that the entry, resulting in defendant's warrantless arrest, was unlawful.

■■■■ II. *Suppression of evidence.* The exclusionary rule bars the use of both evidence directly seized in an unlawful entry and warrantless arrest and evidence discovered indirectly through the use of evidence or information gained in the unlawful entry and warrantless arrest. *Wong Sun v. United States,* 371 U.S. 471, 484–85, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441,

453 (1963); *State v. Luloff,* 325 N.W.2d 103, 106 (Iowa 1982). Evidence obtained as a result of such an arrest must therefore be suppressed unless intervening events break the causal connection between the unlawful entry and the discovery of such evidence. *Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The ultimate question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been [obtained] by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Brown v. Illinois,* 422 U.S. at 599, 95 S.Ct. at 2259, 45 L.Ed.2d at 424 (quoting *Wong Sun v. United States,* 371 U.S. at 487–88, 83 S.Ct. at 417, 9 L.Ed.2d at 455).

In *Brown,* the Court held that the Illinois courts were in error in assuming that the *Miranda* warnings always purge the taint of an illegal arrest. The Court said:

> In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be "sufficiently an act of free will to purge the primary taint." ... If *Miranda* warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted.... The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct are all relevant. The voluntariness

of the statement is a threshold requirement.

*Id.* 422 U.S. at 602–04, 95 S.Ct. at 2261–62, 45 L.Ed.2d at 426–27 (citations and footnotes omitted).

The facts in *Brown, Dunaway,* and *Taylor* are substantially identical to the facts of this case.

In *Brown,* the defendant made an inculpatory statement after he was illegally arrested, taken to the police station, and given his *Miranda* warnings. Brown's statement was separated from his illegal arrest by less than two hours. In *Dunaway,* the defendant made incriminating statements after he was unlawfully taken into custody and given his *Miranda* warnings. In *Taylor,* the defendant signed a written confession after he was illegally arrested, taken to the police station, given his *Miranda* warnings, placed in a line-up, and told by police that his fingerprints matched those on stolen goods. Taylor's confession was separated from his illegal arrest by six hours and a short visit from his girlfriend. In all three of these cases, the Court held that the inculpatory statements must be suppressed because there did not exist any intervening events of significance.

The Court in *Wong Sun* held that defendant's confession was not a fruit of the arrest due to attenuating circumstances that dissipated the taint of the illegal arrest. The facts in *Wong Sun,* however, were significantly different than those before us. Wong Sun had been illegally arrested and then released on his own recognizance after a lawful arraignment. He then returned voluntarily several days later to make the inculpatory statement.

The facts in this case, however, are more closely related to those in *Brown, Dunaway,* and *Taylor* than *Wong Sun.* Hatter was taken to the police station after he was arrested, given his *Miranda* warnings, and then questioned for over four hours during which time he admitted the commission of a number of sexual assaults, including the one on Deborah which is the basis of the present case. The police also had gathered physical evidence from Hat-

ter's residence and car during this time that bore on the case involving Deborah.

In holding such evidence to be tainted fruit of the unlawful entry which resulted in the warrantless arrest for the crime involving Karen, we note that the temporal proximity between the warrantless arrest and defendant's confession as to the alleged crime involving Deborah was relatively short. The record also fails to show a single intervening event of significance between the entry and arrest and the confession.

Accordingly, we conclude that the evidence obtained from the unlawful entry and warrantless arrest of defendant, which included the defendant's inculpatory statements and evidence seized from the defendant's residence and car, must be suppressed.

III. *Other contentions.* We conclude that defendant's remaining contentions are without merit. We discuss them briefly as they may arise on retrial.

A. *Vagueness of Iowa's kidnapping statute.* Defendant's contention that Iowa Code sections 710.1–.2 (1981) are unconstitutionally vague on their face and as applied is without merit. We have most recently rejected this argument in *State v. Newman,* 326 N.W.2d 788, 792 (Iowa 1982), where we said:

> Even if we accept defendant's argument—which we do not do—that the statute does not give a person of ordinary intelligence fair notice of what is prohibited, defendant's argument ignores the guidelines established by [*State v. Rich,* 305 N.W.2d 739 (Iowa 1981)] and cases following the *Rich* rationale. They provide the specificity necessary to meet constitutional standards.

B. *Jury instructions.* Defendant's contention that he was unfairly prejudiced by the jury instructions is without merit.

The trial court properly refused to submit defendant's requested jury instruction number four because it was merely duplicative when read in conjunction with

the court's other instructions. *See State v. Lindsey,* 302 N.W.2d 98, 102 (Iowa 1981) ("A trial court is not required to instruct in the language of requested instructions if the subject is covered in the court's own instructions.").

In addition, we find no error in trial court's marshalling instruction because all of the elements of first-degree kidnapping were included in it. A separate instruction immediately following the marshalling instruction was inserted to more clearly define the elements in accordance with *State v. Rich,* 305 N.W.2d 739 (Iowa 1981). We have held that it is not necessary to define the elements of an offense within the marshalling instruction. *State v. Conner,* 241 N.W.2d 447, 462 (Iowa 1976).

C. *Insufficient evidence.* Finally, defendant's contention that there was insufficient evidence for a conviction of first-degree kidnapping is also without merit. The record reveals the existence of substantial evidence from which a reasonable jury could find that defendant kidnapped the victim, Deborah, and subjected her to sexual abuse. *See generally State v. Ristau,* 340 N.W.2d 273, 275 (1983).

For the reasons stated in divisions I and II, we reverse and remand the case for a new trial.

REVERSED AND REMANDED.