**STATE of Iowa, Appellee,**

v.

**Simmie Lee HARDIN, Appellant.**

No. 84–696.

Supreme Court of Iowa.

Dec. 19, 1984.

David U. Sallen, Fort Madison, for appellant.

Thomas J. Miller, Atty. Gen., Steven K. Hansen, Asst. Atty. Gen., and Michael P. Short, Co. Atty., for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ, and WOLLE, JJ.

WOLLE, Justice.

Defendant Simmie Lee Hardin appeals from his conviction and sentences for kidnapping and sexual abuse in the first degree. He alleges that the trial court erred (1) in overruling his motion to suppress evidence obtained following a warrantless arrest in his residence, and (2) in instructing the jury incorrectly on confinement or removal as an element of the kidnapping offense. We affirm.

The facts are essentially undisputed. At approximately 1:30 a.m. on the morning of September 29, 1983, the adult female victim gave defendant a ride from a local bar to his residence. With the car stopped in front of his house, defendant hit the victim in the face, dragged her out of the vehicle, and forced her inside where he raped her. Defendant then allowed the victim to leave. She immediately drove to her own home and reported the rape to a friend who contacted the police. The victim was taken to a hospital, and at approximately 3:45 a.m. she gave the police the defendant's name and address and described what he had done to her. At 4:20 a.m. six police officers surrounded defendant's residence.

One of them knocked repeatedly on the front door and identified himself as a law enforcement officer, but defendant made no response. At 4:39 a.m. another officer, observing through a bedroom window that defendant appeared to be asleep, cut the screen and entered through the window. Simultaneously a police officer entered by breaking down the front door. Defendant was sleeping in his bedroom and did not resist the police officers as they arrested him and placed him in custody. At 7:55 a.m. the police officers applied for and obtained a search warrant with which they seized incriminating evidence in defendant's residence, as well as on his person.

Defendant moved to suppress the evidence obtained by execution of the search warrant, contending that the evidence constituted the fruits of an illegal warrantless arrest. The trial court, however, overruled the motion to suppress and admitted the evidence at trial.

■ Defendant alleged in his motion to suppress that the warrantless arrest violated his fourth amendment search and seizure rights. Consequently, our review of that constitutional issue on appeal is de novo, and we independently evaluate the totality of the circumstances as shown by the entire record. *State v. Schubert,* 346 N.W.2d 30, 32 (Iowa 1984); *State v. Hatter,* 342 N.W.2d 851, 854 (Iowa 1983).

Our review of the jury instruction question is narrower, focusing on the wording of the instruction by which the trial court explained the element of kidnapping referred to as "confinement or removal." On that second issue defendant urges us to overrule or substantially modify our decision in *State v. Rich,* 305 N.W.2d 739 (Iowa 1981).

I. *The Motion to Suppress.*

■ It is well established that the fourth amendment to the United States Constitution prohibits a warrantless entry into a suspect's home in order to make a routine felony arrest absent consent or exigent circumstances. *Steagald v. United States,* 451 U.S. 204, 211–12, 101 S.Ct.

1642, 1647, 68 L.Ed.2d 38, 45 (1981); *Payton v. New York*, 445 U.S. 573, 586–90, 100 S.Ct. 1371, 1380–82, 63 L.Ed.2d 639, 651–53 (1980); *State v. Hatter*, 342 N.W.2d at 853–54. Because such intrusions are presumptively unreasonable, the State carries the burden of justifying the entry under the alleged exception, here exigency. *Id.* at 854; *State v. Luloff*, 325 N.W.2d 103, 105 (Iowa 1982); *State v. Holtz*, 300 N.W.2d 888, 892 (Iowa 1981). To meet its burden of establishing exigency, the State is required to show the urgency was so compelling that the warrantless entry was objectively reasonable under the applicable constitutional protections. *State v. Holtz*, 300 N.W.2d at 892–93. Factors bearing on the exigency of the situation are whether:

(1) a grave offense is involved;

(2) the suspect is reasonably believed to be armed;

(3) there is probable cause to believe the suspect committed the crime;

(4) there is strong reason to believe he is on the premises;

(5) there is a strong likelihood of escape if not apprehended; and

(6) the entry, though not consented to, is peaceable.

*State v. Blackman*, 346 N.W.2d 12, 14 (Iowa 1984); *State v. Hatter*, 342 N.W.2d at 855; *State v. Luloff*, 325 N.W.2d at 105.

■ Defendant concedes that the class A felonies with which he was charged were grave offenses. In the face of what the victim and two other individuals reported to the police officers, defendant also acknowledges that the State had probable cause to believe he committed the crime and subsequently remained at the scene, his residence. Nevertheless, defendant contends that his motion to suppress should have been sustained because the State failed to satisfy three of the listed criteria for determining the presence of exigent circumstances. We disagree, both because the evidence satisfied more than three of the listed criteria and because those criteria ought not be so rigidly applied.

We have frequently explained that the six criteria for determining exigency are not all-inclusive, and they need not all be satisfied in each case. *State v. Blackman*, 346 N.W.2d at 14; *State v. Hatter*, 342 N.W.2d at 855. Exigent circumstances usually are found to exist where there is a danger of violence and injury to the officers or others, a risk that the suspect may escape, or a probability that evidence will be concealed or destroyed if arrest is unduly delayed. *State v. Luloff*, 325 N.W.2d at 105; *State v. Holtz*, 300 N.W.2d at 893. Each of those factors was present here. We agree with the trial court that the events preceeding defendant's arrest clearly reflect the exigency of the situation confronting police officers in this case.

By the victim's uncontroverted account, the crime was committed between 1:30 and 3:30 a.m. Police officers were notified at approximately 3:45 a.m. and swiftly took action, completing the arrest within an hour. Consequently, this case is readily distinguishable from *State v. Hatter*, where the police did not arrest the person accused of sexual abuse until 18 hours after the offense allegedly occurred and six hours after the victim reported the incident and identified the suspect. *Id.* at 855. In addition to the short time span here between reporting of the crime and subsequent arrest, the record indicates that the police had reason to believe defendant was in possession of dangerous weapons and was a serious threat to the public. An acquaintance of defendant told the police he thought that two guns missing from his residence had been stolen by defendant. Moreover, the police officers were aware that defendant was a paroled felon, and they had observed how severely the victim had been beaten. Despite defendant's assertions, we conclude that the police could reasonably assume from the information provided them that defendant was armed and dangerous. *See State v. Jones*, 274 N.W.2d 273, 276 (Iowa 1979) (police reasonably believed defendant was armed on basis of record of prior arrest and report that crime involved use of force).

Another important factor in this case was the strong likelihood that defendant would destroy inculpatory evidence on his body and in the bedroom while a warrant was being sought. From the bloody and disheveled condition of the victim, the police reasonably expected to find what in fact was discovered upon arrest—the victim's hair in defendant's beard, her blood on his body, and meaningful scrapings underneath his fingernails. Defendant could have extinguished much of that incriminating evidence merely by showering, an additional factor supporting the warrantless immediate arrest. *See State v. Johnson,* 232 N.W.2d 477, 479–80 (Iowa 1975) ("[I]t is unreasonable and unrealistic to say peace officers must wait outside while a suspect remains secure inside his home, free to arm himself, destroy evidence or plan an escape.").

Defendant relies heavily on the last two of our six listed factors for determining exigency, urging that there was no strong likelihood of an escape and that the entry by police officers was not peaceable. He points to the fact that he was asleep, the police had his residence completely surrounded, and nevertheless the police officers cut through a screen window and broke down a door to enter his house. We recognize that the entry was not peaceable, but the officers' forceful actions were warranted because they reasonably thought he was armed and believed he had committed a very serious violent offense. The totality of the circumstances here reflect the exigency of the situation. As we said in *State v. Brown:*

> On hindsight, it may have been possible to obtain a warrant. However, in light of the State's strong showing of other factors establishing exigent circumstances justifying the search, we do not find surveillance of the residence to be constitutionally required.

309 N.W.2d 425, 427 (Iowa 1981).

We hold that the warrantless entry into defendant's residence and his subsequent arrest were well within the exigency exception to the constitutional warrant require-

ment. Because the entry and arrest were lawful, there is no merit to defendant's contention that the trial court should have suppressed, as fruits of an illegal arrest, the evidence subsequently obtained pursuant to a search warrant. The trial court correctly overruled the motion to suppress and defendant's objection to admission of that evidence at trial.

II. *The Challenge to the Jury Instructions.*

■ Defendant also assigns as error that portion of the jury instructions in which the trial court explained the element of kidnapping known as confinement or removal. The statutory definition of kidnapping provides in pertinent part:

> A person commits kidnapping when he or she either confines a person or removes a person from one place to another, knowing that he or she has neither the authority nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by one or more of the following:
>
> . . . .
>
> (3) The intent to ... subject the person to a sexual abuse.

Iowa Code § 710.1 (1983). In *State v. Rich,* 305 N.W.2d 739 (Iowa 1981), this court held that the phrase "confines a person or removes a person" requires more than the confinement or removal that is an inherent incident of sexual abuse; we said:

> Such confinement or removal may exist because it substantially increases the risk of harm to the victim, significantly lessens the risk of detection, or significantly facilitates escape following the consummation of the offense.

*Id.* at 745. *Accord State v. Ristau,* 340 N.W.2d 273, 275–76 (Iowa 1983); *State v. Newman,* 326 N.W.2d 796, 801–02 (Iowa 1982); *State v. Knupp,* 310 N.W.2d 179, 182–83 (Iowa 1981).

Using that and other language in *Rich* as a guide, the trial court instructed the jury:

> One of the essential elements which the State is required to prove beyond a reasonable doubt in either kidnapping in

the first degree or kidnapping in the third degree or false imprisonment is that [the victim] was confined or removed.

In that regard, you are instructed that this requires more than confinement or removal that is inherent within the commission of the offense of sexual abuse.

A person is "confined" when that person's freedom to move about is substantially restricted by force, threat, or deception. The person may be confined either in the place where the restriction commences or in a place to which the person has been removed.

Although no minimal period of confinement or distance of removal is required, such must exceed that which is normally incidental or dependent upon the commission of a sexual abuse and must be more than slight, inconsequential, or as an incident inherent in the offense of sexual abuse so that the confinement or removal has a significance separate and apart from a sexual abuse.

Such confinement or removal may exist because it substantially increases the risk of harm to the victim or significantly lessens the risk of detection.

Defendant acknowledges that the trial court's instruction correctly reflects our prior interpretations of the kidnapping statute. He proposes, however, that we now adopt a narrower interpretation, eliminating as a factor that type of confinement or removal which merely "significantly lessens the risk of detection." If we were to approve defendant's proposed instruction, the prosecution would be unable to prove the "confinement or removal" element of kidnapping without showing that it had substantially increased the risk of harm to the victim. *See* Note, *Kidnapping in Iowa: Movements Incidental to Sexual Abuse*, 67 Iowa L.Rev. 773, 800–801 (1982) (advocating adoption of this narrower interpretation and the language of defendant's proposed jury instruction).

Before deciding *Rich* this court carefully studied the decisions of other courts which have wrestled with the problem of drawing a line between the statutory offenses of kidnapping and sexual abuse. *Rich* discussed those cases in considerable detail, then drew a careful line between what was not sufficient for kidnapping—confinement or removal which is merely incidental to sexual abuse, and what is sufficient—confinement or removal which (1) substantially increases the risk of harm to the victim, (2) significantly lessens the risk of detection, or (3) significantly facilitates escape following the consummation of the offense. 305 N.W.2d at 745. We have reconsidered our analysis of the kidnapping statute in *Rich* and conclude that we there correctly interpreted the intent of the legislature and arrived at a sound and workable distinction between kidnapping and sexual abuse. We reaffirm the holding and language of *Rich*.

■ There was adequate record support for the kidnapping instructions which were given to the jury. From the evidence introduced at trial the jury could have found beyond a reasonable doubt that defendant assaulted the victim in her car, then dragged her out of the car and forced her into his residence where his actions would be less detectable and where he might batter her at will. In the house the risk of detection would be less likely, the risk of harm to the victim more likely.

We find no merit in the defendant's assigned errors.

AFFIRMED.