**STATE of Iowa, Plaintiff-Appellee,**

v.

**Ralph Andrew MORALES,
Defendant-Appellant.**

**No. 85–1210.**

Court of Appeals of Iowa.

Aug. 27, 1986.

Charles L. Harrington, Appellate Defender, and John P. Messina, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Elizabeth E. Ciebell, Asst. Atty. Gen., and Harold L. Denton, Asst. Linn Co. Atty., for plaintiff-appellee.

Considered by OXBERGER, C.J., and SNELL and HAYDEN, JJ.

SNELL, Judge.

At approximately 12:30 a.m. on March 7, 1985, a Hardee's restaurant employee named Elena Holub was confronted at gunpoint as she was dropping two money bags into the night depository box at the Guaranty Bank of Cedar Rapids. The gunman ordered Holub to give him the bags, but Holub quickly dropped the bags into the depository and the gunman took off running. Another Hardee's employee arrived at the scene in time to see the brief confrontation at the bank. He pursued the robber a short distance, but stopped when the robber pointed the gun at him. These witnesses saw only the one person involved in the robbery. Holub later described the robber as approximately 5′ 5″ in height and weighing approximately 150 pounds. She also indicated that the robber wore a ski mask and a red jacket with striping around the cuffs.

On March 12th, Eric Becker went to the Cedar Rapids police and told Detective Gary Stark that defendant, Ralph Morales, and one Ted Reilly had been involved in the planning and execution of the Holub robbery. The police obtained a search warrant for what they thought to be defendant's apartment. Upon arriving at the apartment building, the police found defendant in the front yard. The defendant agreed to go to the police station for questioning, but asked if he could enter the apartment first to tell his stepfather where he would be. The police agreed to this request and then followed him into the apartment building without requesting defendant's permission to do so. Nor did defendant resist their accompanying him. At this point they discovered the warrant bore the wrong address. They continued to follow defendant into his apartment, still without permission or denial of access. Upon entering the apartment, the police noticed a red jacket which matched the robbery victim's description of the robber's apparel. The police seized this jacket.

Before trial the defendant moved to suppress evidence based on the seizure of the jacket. The district court overruled this motion. At trial the jacket itself was not introduced into evidence. In addition, the jury was informed that the victim could not identify the seized jacket as the one worn by the robber. There was testimony, however, identifying the jacket as being the same style as that worn by the robber.

On May 15, the jury found defendant guilty of robbery in the second degree and guilty of conspiracy. The conspiracy verdict merged with the finding of guilt on the robbery count, and defendant was sentenced solely on the latter conviction. Iowa Code § 706.4 (1985); *State v. Waterbury*, 307 N.W.2d 45, 52 (Iowa 1981). He received a mandatory indeterminate ten-year term of incarceration on the robbery conviction.

On appeal, Morales contends that the entry by the three Cedar Rapids police detectives into his home was without constitutional justification that, consequently, the seizure of his jacket was violative of his fourth amendment protections and that the trial court erred in overruling his motion to suppress.

■ Because defendant claims he was deprived of a constitutional protection, our review consists of an independent evaluation of the totality of the circumstances. This is equivalent to a de novo review. *State v. Schubert*, 346 N.W.2d 30, 32 (Iowa 1984); *State v. Hatter*, 342 N.W.2d 851, 854 (Iowa 1983).

There exists some degree of confusion among the parties to this appeal as to whether the search warrant was ever actually executed. However, as it was presented to defendant's stepfather upon the detectives entering defendant's apartment, as two of the detectives present signed an "Inventory of Property Seized Pursuant to the Execution of a Search Warrant" stating they had executed the warrant, and as defendant's stepfather was given a return of service for the search warrant, we treat the warrant as having been executed.

Defendant argues that the warrant was invalid because it erroneously described the premises to be searched as "the residence

658

located in the lower apartment at 1517 Washington Avenue SE." Defendant, in fact, resided in the upper apartment of that address.

■ The test for determining the constitutional sufficiency of a warrant description was discussed by the 8th Circuit Court of Appeals in *United States v. Clement*, 747 F.2d 460 (8th Cir.1984). There, the court dealt with a warrant which contained a wrong apartment number. The court stated the applicable test to be " 'whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.' " *Id.* at 461, quoting *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir.), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). Factors to be considered in applying this standard include (1) whether the description has other parts which identify the place to be searched with particularity; (2) whether the address in the warrant, although incorrect, still describes the same piece of property; (3) whether the premises intended to be searched are adjacent to those described and are all under the control of the defendant; (4) that the incorrect address describes a place not in existence, or that other parts of the description which are correct limit the place to be searched to one place; and (5) that the premises which are intended to be searched had previously been surveilled or were being surveilled while the warrant was obtained. *Gitcho*, 601 F.2d at 371–72.

■ In adopting and applying these standards, we find the warrant to be fatally defective. The warrant describes the premises to be searched as "the residence located in the lower apartment at 1517 Washington Avenue SE, Cedar Rapids, Linn County, Iowa, including the basement, the residence of Roland Kase and his son, Ralph Morales, a white two-story house." The correct parts of the description do not identify the defendant's residence with sufficient particularity, especially given the

detective's knowledge of the building's multi-apartment character. The incorrect address in the warrant can be said to have described the "same piece of property" as that intended to be searched only in the most non-particularized sense of that phrase. We find nothing in the record which would lead us to believe that the defendant had control over the entire building. The incorrect description described an apartment very much in existence. The correct parts of the description did not limit the search to one place, and we find no evidence that the defendant's apartment had been under surveillance. Clearly the warrant fails to meet the demands imposed by the fourth amendment as interpreted by the court of appeals for this circuit.

The State appears to argue that it was not until the detectives entered the building in which defendant's residence was located that they "discovered" the residence was comprised of two apartments and that, therefore, the warrant was not legally defective. Were this the case, there would be some support in the cases for the State's position. *See, e.g., United States v. Davis*, 557 F.2d 1239 (8th Cir.1977). The search warrant itself, however, belies the State's position. As we have noted, the warrant states the premises to be searched consisted of "the residence located in the *lower apartment* at 1517 Washington Avenue SE" (emphasis added). An identical description appears on the application for the warrant. Obviously, the detectives knew prior to entering the building that it contained more than one apartment. Their warrant was for the wrong one, however, rendering it constitutionally invalid.

The State, although arguing briefly in support of the validity of the warrant, devotes the lion's share of its argument in support of the trial court's denial of the motion to suppress to another point. The State contends that the detectives were voluntarily admitted to defendant's home by defendant and his stepfather and that, once lawfully inside the apartment, they seized defendant's jacket pursuant to the "plain view" doctrine. Defendant counters that

no consent to the detectives' entrance into defendant's home was given and, as a consequence, any reliance on the plain view doctrine is misplaced.

■ The plain view doctrine provides a basis for upholding a seizure of evidence without a search warrant. The burden is on the State to prove its applicability. *State v. Oliver*, 341 N.W.2d 744, 745 (Iowa 1983). Three prerequisites must be satisfied for a plain view seizure. The intrusion into the otherwise protected area must be justified, the discovery of the item must be inadvertent, and its incriminating nature must be immediately apparent. *Id.* at 746.

■ The first requirement is that the intrusion be justified. The State asserts that the detectives had the consent of defendant and defendant's stepfather to enter their apartment. The burden is on the State to show, by a preponderance of the evidence, that consent to enter was voluntarily given. *State v. Hatter*, 342 N.W.2d 851, 854 (Iowa 1983); *State v. Folkens*, 281 N.W.2d 1, 3 (Iowa 1979). The United States Supreme Court has held that "[t]his burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 548–49, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802 (Iowa 1968). We are of the opinion that the State did not meet this burden in the case at bar.

None of the detectives who had been present in defendant's apartment testified that they sought or received express consent to enter. The most that can be ascertained from the record is that no one denied the detectives entry nor requested that they leave. The case at bar is similar in this respect to *State v. Hatter*, 342 N.W.2d 851 (Iowa 1983), where the supreme court of this state reviewed de novo a similar set of circumstances. In *Hatter*, the trial court found that although the detectives involved there had not obtained "actual consent" to enter defendant's residence, neither had they been denied access to the home. The court interpreted this finding "to mean that consent to enter was not 'voluntarily' given but rather was the result of 'acquiescence to a claim of lawful authority.'" *Id.* at 854.

The court's analysis in *Hatter* holding an entry of that type to be nonconsensual is applicable to this case. That the "consent" was in fact merely acquiescence to a claim of lawful authority is doubly apparent when one considers the testimony, on both sides of the case, that defendant's stepfather was shown the search warrant at the precise time he allegedly "consented" to the detectives' presence. We therefore hold that the State has failed to meet its burden of showing that consent to enter defendant's apartment was voluntarily given. Consequently, the State has failed to satisfy the initial requisite of a plain view seizure that the State's intrusion into the otherwise protected area be justified.

Even were we to find the detectives' presence in defendant's apartment to be justified, we would find the plain view doctrine unavailable to the State here as we are also unpersuaded that the State has satisfied the second requisite for its application: that the discovery be inadvertent. In *State v. Sheppard*, 325 N.W.2d 911, 915–16 (Iowa Ct.App.1982), this court quoted with approval the following annotation from 29 L.Ed.2d 1067, 1075:

If law enforcement officers anticipate before going to a particular place that they will find certain incriminating evidence there, and if there is no substantial danger that taking the time to obtain a valid warrant will result in the disappearance of the evidence, the officers must obtain a valid warrant authorizing the seizure of such evidence, 'exigent circumstances' justifying the failure to obtain a valid warrant in such a situation are lacking, and the mere fact that the evidence which the officers anticipated seizing at the particular place turns out to be in plain view when they arrive there cannot justify their seizure of the evidence without their first having obtained a valid warrant.

■ We believe that in the case at bar the detectives *expected* to seize defendant's

jacket. It was one of only two items listed on the search warrant. Since the detectives expected to seize the jacket from defendant's apartment, we decline to find its discovery inadvertent.

Consequently, we hold that the seizure of defendant's jacket was not constitutionally justified under the plain view doctrine.

The State contends, finally, that even assuming error on the part of the trial court, such error was harmless and does not require reversal. This, argues the State, is because the jacket was never introduced into evidence at trial and, notwithstanding references to it, the victim testified that she could not identify the jacket as the one worn by the robber. Defendant contends he was prejudiced by the State's use of the jacket to link defendant to the crime via testimony concerning the victim's identification of the jacket's style as matching that worn by the robber.

Not every error, even one of constitutional proportions, justifies a new trial. *State v. Freeman*, 297 N.W.2d 363, 367 (Iowa 1980). A defendant is entitled to a fair trial but not necessarily a perfect one. *State v. King*, 256 N.W.2d 1, 12 (Iowa 1977). To deny a defendant a new trial, we must say the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 709–10 (1967); *Freeman*, 297 N.W.2d at 367. The reasonable doubt issue before us is not whether we would believe the defendant's guilt was proved beyond a reasonable doubt. The question is whether it appears beyond a reasonable doubt that the error did not affect the accused's right to a fair trial. *State v. Porter*, 283 N.W.2d 351 (Iowa 1979). We think the trial court's error was harmless beyond a reasonable doubt and, consequently, does not require reversal.

Many of the cases finding error in the admission of evidence to be harmless do so on the theory that the disputed evidence is merely cumulative. *State v. Freeman*, 297 N.W.2d 363, 367 (Iowa 1980). *See, e.g., Ricehill v. Brewer*, 459 F.2d 537,

540 (8th Cir.1972). As noted above, the jacket in question was never introduced into evidence at trial. The defendant nevertheless protests the State's attempt to link him to the robbery by offering testimony of the victim's identification of the jacket's style as similar to that of the jacket worn by the robber. The defendant does not deny, however, that his jacket was worn by the robber. The defendant admits this both at trial and in his signed statement. This fact is also supported by testimony from Eric Becker, who was with defendant on the night of the robbery. These statements are all rightfully in the record independent of the illegal seizure and render the brief references at trial to the seized jacket merely cumulative. Defendant's contention that he was not wearing the jacket at the time of the robbery does not make the references under consideration any less cumulative.

Accordingly, we affirm the judgment of the district court.

AFFIRMED.

HAYDEN, J., concurs.

OXBERGER, C.J., specially concurs.

OXBERGER, Chief Judge, (concurring specially).

I would find the warrant valid. The test is whether the address listed in the warrant described premises sufficiently to enable police to locate and identify the premises with reasonable effort.

In a two-apartment building most reasonable people can find the correct apartment.