STATE of Iowa, Appellee,

v.

Jon Linley PAYTON, Appellant.

No. 91–336.

Supreme Court of Iowa.

Feb. 19, 1992.

Karla J. Fultz, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Sheryl A. Soich, Asst. Atty. Gen., John P. Sarcone, County Atty., and Scott Rosenberg, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and ANDREASEN, JJ.

HARRIS, Justice.

Defendant Jon Linley Payton assigns two errors on appeal following his convictions of four sexual abuse violations. We find no error in either assignment and affirm the convictions.

The defendant was originally charged with two counts of second-degree sexual abuse in violation of Iowa Code section 709.3(2) (1989), and two counts of third-degree sexual abuse in violation of Iowa Code section 709.4(3). There were four convictions: one of second-degree sexual abuse; one of third-degree sexual abuse; and two of assault with intent to commit sexual abuse. Victims were defendant's three minor children, then five, seven and twelve years of age. Although defendant denies they occurred, numerous incidents (digital penetration and fondling of the children's genitalia) were shown.

The children testified that defendant told them not to tell anyone of the incidents and threatened to hurt them or other family members if they did so. The twelve-year-old, a daughter, on occasion escaped through a window when she heard defendant approaching her room in order to avoid him. She often stayed out all night on these occasions, engendering the antagonism of her parents for doing so.

After the events had been occurring for some time, defendant's marriage to the children's mother collapsed, and the defendant moved from the family home. But the attacks continued in hotels during weekend visitations. The incidents were first reported by defendant's twelve-year-old daughter when the dissolution of marriage suit reached a resolution. A medical examination of the child yielded physical evidence confirming invasion of her genitalia.

Each child testified about the incidents involving them but, in at least the case of one of them, the testimony contrasts with statements previously made out of court. Before coming forth with his allegations,

defendant's son on five separate occasions denied to the authorities that defendant had sexually abused him.

■ I. These earlier denials, and the delay by the children in revealing the incidents, set the scene for defendant's challenge to the testimony of Mindy Levine, an expert witness called by the prosecution. An experienced and qualified therapist at a Des Moines hospital, Levine was called during the State's case in chief. Defendant's first challenge is to the admission of her testimony. To prevail on the point defendant must show an abuse of discretion. *State v. Chadwick*, 328 N.W.2d 913, 917 (Iowa 1983).

The testimony in chief did not relate to the specific children in this case. Indeed Levine had never interviewed them and was called only to explain why child sex abuse victims often delay reporting it. Levine described the "delayed reporting syndrome." She testified:

> The child has to feel safe before they'll tell. I mean, I've seen kids who have been asked six, seven, eight, fifteen times and they'll deny it. They will sit and look at you and they'll say no, I have not been abused. And one day they will walk into your office and they'll say I have something I need to say and they will sit down and tell you they've been abused and describe it in detail.

Defendant first challenges the relevancy of this testimony, complaining that it contains only generalizations because Levine had never interviewed these children. Defendant argues that, because Levine could neither testify that these children had been molested nor identify the defendant as the molester, her testimony should have been excluded.

■ The general subject of the witness's testimony is proper for expert testimony. In *State v. Gettier*, 438 N.W.2d 1, 4–6 (Iowa 1989), we found no abuse of discretion in allowing an expert to testify generally about post-traumatic stress disorder. We thought the general nature of the expert's testimony militated in favor of its admission, pointing out that the testimony showed only the typical symptoms and of-fered no opinion on what happened in the specific case being prosecuted. *Id.* at 5–6.

In *State v. Myers*, 382 N.W.2d 91 (Iowa 1986), our majority reversed a conviction because of the admission of expert testimony that children ordinarily do not fabricate stories of sexual abuse. Our majority reversed because the facts fell on the wrong side of a line. On the proper side of the line we said "experts will be allowed to express opinions on matters that explain relevant mental and psychological symptoms present in sexually abused children." *Id.* at 97. On the improper side of the line would be "expert testimony that either directly or indirectly renders an opinion on the credibility or truthfulness of a witness." *Id.* Levine's testimony concerning typical psychological symptoms clearly fell on the proper side of the line drawn in *Myers.* The challenge is without merit.

■ There is no merit in defendant's assertion under Iowa rule of evidence 403 that the probative value of Levine's testimony was outweighed by its prejudice. This was also a discretionary ruling. *State v. Walsh*, 318 N.W.2d 184, 187 (Iowa 1982). The trial court acted well within its discretion in determining this evidence was highly probative in explaining a matter with which the jury would likely be unfamiliar, and one directly relevant to other testimony. It was not the type of evidence likely to provoke the jury to convict defendant out of hostility, passion, bias or any other improper basis.

■ Defendant also argues that Levine's testimony was improper because it was admitted in the State's case in chief and not as rebuttal testimony. He argues this runs afoul the holding in *State v. Dodson*, 452 N.W.2d 610, 612 (Iowa App.1989), which limits to rehabilitation purposes any expert testimony explaining why children delay reporting sexual abuse.

The State does not challenge this holding in *Dodson*, so we accept it as the law of this case. We however agree with the State and with the trial court that Levine's testimony was rehabilitative, a characteristic in no way altered because it occurred

during the State's case in chief. Testimony regarding the children's statements, and lack of them, already was a central issue in the case. There were extensive attempts to impeach each child on cross-examination regarding their prior statements.

A proper limiting instruction was given. The jury was told not to use Levine's testimony as substantive evidence. It was not necessary, as defendant asserts, that this instruction should have been given in advance of Levine's testimony.

██ Defendant next complains of testimony by Levine on redirect, following cross-examination by the defense. At that time she stated in substance it would·be difficult for a child to assimilate and remember fabricated information regarding sexual abuse. We need not consider defendant's claim that admission of this testimony was improper under our holding in *Myers*. The testimony was invited by defense cross-examination when Levine was asked whether it was possible for some children to fabricate tales of sexual abuse in the context of child custody and visitation. She answered that it was.

The rule is well settled that one who induces the trial court to "let down the bars" to a field of inquiry cannot complain if an adversary takes advantage of the same opening. *See McCormick on Evidence* § 57, at 147 (3d ed. 1984). Defendant's counsel's awareness of the invited error rule was probably responsible for the absence of any objection when the challenged evidence was received. We note that the challenge could also be rejected on that basis. *State v. Washington*, 356 N.W.2d 192, 194 (Iowa 1984). We reject the challenge.

██ II. Defendant's second assignment of error challenges the admission of statements defendant made during a polygraph examination. The challenged evidence was not of the examination itself, or of test results; the jury in fact never learned a polygraph test had been conducted. Rather the statements were made, not as a part of the actual polygraph examination, but during a preliminary interview. The statements, which concerned defendant's past drug habits, temperament toward his family, and past sexual acts, were reported by an officer, the presence of whom defendant was unaware. The officer observed the process on closed-circuit television. In his sole challenge to these statements, defendant contends they were inadmissible because, he says, they were involuntary.

██ The burden of proof is on the State to show the statements were voluntary. *State v. Davidson*, 340 N.W.2d 770, 771 (Iowa 1983). The burden must be met by a preponderance of the evidence, not beyond a reasonable doubt. *State v. Cullison*, 227 N.W.2d 121, 127 (Iowa 1975). We give considerable weight to the findings of the trial court on the question of voluntariness. *State v. Hatter*, 342 N.W.2d 851, 854 (Iowa 1983).

██ Statements are voluntary if they were the product of an essentially free and unconstrained choice, made by the defendant whose will was not overborne or whose capacity for self-determination was not critically impaired. *State v. Snethen*, 245 N.W.2d 308, 315 (Iowa 1976). Our review is on the totality of the circumstances. *Cullison*, 227 N.W.2d at 127. A number of factors help in determining voluntariness. Among them are: defendant's age, *State v. Aldape*, 307 N.W.2d 32, 37 (Iowa 1981); whether defendant had prior experience in the criminal justice system, *State v. Hodges*, 326 N.W.2d 345, 348 (Iowa 1982); whether defendant was under the influence of drugs, *State v. Wilson*, 264 N.W.2d 614, 614–15 (Iowa 1978); whether *Miranda* warnings were given, *State v. Blanford*, 306 N.W.2d 93, 95–96 (Iowa 1981); whether defendant was mentally "subnormal," *State v. Reid*, 394 N.W.2d 399, 403 (Iowa 1986); whether deception was used, *State v. Jacoby*, 260 N.W.2d 828, 832–33 (Iowa 1977); whether defendant showed an ability to understand the questions and respond, *Reid*, 394 N.W.2d at 404; the length of time defendant was detained and interrogated, *Cullison*, 227 N.W.2d at 129; defendant's physical and emotional reaction to interrogation, *Davidson*, 340 N.W.2d at 773; whether physical

punishment, including deprivation of food and sleep, was used, *State v. Whitsel,* 339 N.W.2d 149, 154 (Iowa 1983).

The State certainly makes a strong initial case of voluntariness under these authorities. Defendant signed, after reading aloud, a written waiver in which he freely and voluntarily submitted to the polygraph test. The waiver contained the routine *Miranda* rights, including of course an acknowledgment that anything defendant said could and would be used against him in court. Defendant, forty years old at the time, was not inexperienced in dealing with police officers. He admitted at the suppression hearing he had talked with police officers at least 100 times and had been given *Miranda* warnings fifteen to twenty times. He had been convicted of crimes at least five times. There was no evidence defendant was under the influence of drugs. He is a college graduate and there are no indications he is mentally subnormal, or could not for any reason understand or respond to questions. There is no suggestion he was deprived of food or sleep or had an adverse physical or mental reaction to the two and one-half-hour examination.

Defendant nevertheless thinks the admissions were involuntary because, according to his testimony, he was assured anything he said to the polygraph operator would be confidential. Assuming that assurances of confidentiality must be honored, and that violation of those assurances renders any admissions involuntary, we reject the assignment. We believe the assurances were not made.

The State's evidence concerning assurances of confidentiality was quite different. According to the State's evidence, the metes and bounds of confidentiality were explained when defendant was told only that the test results could not be used in court. The examining officer insisted he also told defendant his assurances of confidentiality extended only to the examination itself, and not to other things talked about during the interview.

We are persuaded by the State's version of the conflicting evidence concerning assurances of confidentiality. It appears by the greater weight of evidence that defendant was assured that only the polygraph tests and its results would be confidential. The admissions here fell outside the delineated limits of confidentiality. Defendant's contention to the contrary is without merit.

 One factor alone militates strongly in favor of defendant's challenge to the voluntariness of his admissions. Defendant was deceived into believing he and the polygraph operator alone were witness to the examination. A sense of fairness is offended by thus misleading the defendant and leaving him unaware that another officer was viewing the process by closed-circuit television. Although we are offended by the tactic, the rule is clear that deceit, though a factor, is not conclusive, and is only one thing to consider in determining voluntariness. *State v. Oliver,* 341 N.W.2d 25, 29–31 (Iowa 1983). All other factors appearing here strongly militate in favor of voluntariness. Although in a closer case deceit might tip the balance, it does not do so here.

AFFIRMED.