# IN THE COURT OF APPEALS OF IOWA

No. 16-0449
Filed February 8, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ERICK IVAN SORIANO,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dallas County, Gregory A. Hulse, Judge.

Erick Soriano appeals the denial of his motion to suppress and the sentences imposed upon his convictions for lascivious acts with a child and child endangerment.  **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., Vogel, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**MAHAN, Senior Judge.**

Erick Soriano appeals the denial of his motion to suppress and the sentences imposed upon his convictions for lascivious acts with a child, in violation of Iowa Code section 709.1, .8(1)(a), .8(2)(a), and child endangerment, in violation of section 726.6(1)(a), .6(3), and .6(7).[1] He contends the statements he made to police were not voluntarily made. Soriano also asserts the trial court abused its discretion in sentencing him to a term of imprisonment. We find no reason to set aside either the denial of the motion to suppress or the sentences imposed, and we therefore affirm.

In December 2014, Soriano—who has been diagnosed with bipolar disorder—was involuntarily hospitalized and found to be seriously mentally impaired after a manic episode. A mental health court order required that he receive inpatient treatment, including psychiatric medications. A December 18, 2014 report to the court indicated Soriano had been "medication compliant" since intake and his symptoms were "beginning to stabilize," and requested permission to discharge Soriano to his home.

Soriano was transferred to outpatient status on December 22, but soon stopped taking his medications. On January 8, 2015, Soriano had another episode, ending in an emergency room intake and evaluation. On January 13, a mental health order was filed in which the court stated Soriano stipulated to treatment recommendations, including longer-lasting injectable medicines.

J.B. was born in January 2007. On February 19, 2015, J.B. was visiting her grandmother's home. She used her aunt's computer, and J.B. was found

---

[1] All citations are to the 2014 Iowa Code.

watching a pornography website on the computer. J.B. reported to her grandmother and aunt that when she was seven years old, Soriano once had made her watch pornography on a website and, on another day, had touched her "private part." The family informed J.B.'s mother, who confronted Soriano about the allegations.

On February 20, J.B.'s mother took her to the hospital emergency room for a medical examination, and the department of human services (DHS) and the police were informed of the child's allegations. DHS Child Protective Worker John Crouse was assigned the case on February 20. Crouse met with the child and mother at the hospital. After speaking with them, Crouse contacted Soriano by telephone to see if he would agree to a safety plan, which provided he would have no contact with J.B. during the course of an investigation into a report that Soriano had touched J.B. inappropriately. In that conversation, Soriano told Crouse he "was sorry" and he "only did it once."

Law enforcement searched Soriano's home and seized a laptop computer, which was connected to a television. The laptop was taken to the state crime lab for analysis. Links to pornography websites were located on the computer's internet history. The username under which most of the links were found was "Erick."

At a March 6 mental health hearing, the court ordered continued outpatient treatment for medication management. The court also ordered Soriano to be transported home "immediately" following the hearing. Soriano remained and still remains subject to a mental health commitment.

Detective Sergeant Jerome Hill was investigating J.B.'s allegations and was aware Soriano had a hearing at the courthouse on March 6. Detective Hill testified that when Soriano "was released from that [hearing], he came over to the sheriff's office." Detective Hill then met with Soriano in an interview room, explained he needed to speak to Soriano about J.B., and read Soriano his *Miranda* rights. Soriano stated he understood his rights ("I understand very well.") and agreed to speak with the detective. Detective Hill asked Soriano to provide his name, address, date of birth, social security number, and phone number. Soriano provided appropriate answers to all of these questions and corrected the detective a couple of times on misunderstandings. Soriano stated he had two personalities and one of his personalities did "bad things" to J.B. When asked to explain what bad things, Soriano stated, "[A]bout the sex." He denied having sex with J.B. He stated that when he was unemployed (starting September 2014) he watched a sex video with J.B. from a website. He wrote the website address for Detective Hill. Soriano said it was when J.B. was almost eight years old. He also stated he touched J.B. on her "front" "personal parts" while she had her clothes on. Soriano asked if the no-contact order in effect restricted his contact with a daughter. He also stated he was talking to the police by himself because he was trying to be a better person. The whole interview was recorded and lasted less than twenty-five minutes. Soriano was then transported to his residence.

Soriano was subsequently charged with child endangerment and lascivious acts with a child. He filed a motion to suppress the statements he made to Crouse and to Detective Hill. He asserts those statements were not

voluntarily made based upon his mental condition. He also challenges them, arguing that because he is a native Spanish speaker, the statements were not knowingly and intelligently given based upon his limited ability to speak and understand English.

After a hearing at which Crouse and Detective Hill testified, the district court found Soriano's statements to Detective Hill were made during a custodial interrogation and pursuant to a valid waiver. The district court observed,

> Although the State concedes in its brief [Soriano] was under medication, the questioning was 25 minutes, the investigator's tone was normal, Soriano appeared to understand his surroundings, Soriano hadn't just experienced any sort of traumatic event, no deception was used, and no physical punishment was used. Soriano's mental health commitment, by itself, cannot constitute an invalid waiver of his *Miranda* rights.

The court used a different analysis concerning the statements made to Crouse, however, concluding:

> [Soriano] was definitely not in a custodial situation when he talked to Mr. Crouse by telephone and he was not being interrogated. The sole purpose of the call was to see if he would agree to a safety plan. Mr. Crouse's testimony is undisputed that defendant's statement that he was sorry and that it only happened once was voluntary and not in response to any question asked by Crouse. It is the only evidence the court has to determine whether defendant's mental condition affected his ability to understand the situation.

The court determined the statements were voluntarily given.

The court then rejected Soriano's claim that his statements were not knowingly and intelligently give due to a language barrier. The court wrote,

> Both John Crouse and Detective Hill conducted their conversations with the defendant solely in English, with the exception that Detective Hill provided defendant with a written *Miranda* waiver that contained a Spanish translation. John Crouse testified in detail that he had no difficulty understanding [Soriano] and [Soriano] had no difficulty in understanding him during their telephone conversation

on February 2[0], 2015. There is no contrary evidence. It is clear from the audiotaped interview in this matter that the [Soriano] does, in fact, speak English. Although his English is heavily accented, it is clear that he understood what the officer was asking and was able to make himself understood to the officer. He appropriately responded to the detective's questions, providing his name, address, date of birth, social security number, and phone number when asked. When he gave the officer his social security number, Detective Hill misunderstood his answer and [Soriano] corrected the officer to provide the correct information. [Soriano] was asked if he understood his Miranda rights as read to him in English and he responded, "I understand very well." Soriano sufficiently comprehended the English language when he knowingly and intelligently made statements to Detective Hill.

The court thus denied Soriano's motion to suppress.

At trial, prior to Detective Hill testifying the court gave the jury a limiting instruction that Soriano was

not relying upon his mental condition at the time of the alleged crimes to diminish his responsibility; therefore, defendant's mental state or condition at the time of the alleged crimes is not to be considered by you in determining whether defendant had the specific or general intent to commit the alleged crimes and/or whether he was consciously aware of his actions. You may consider it only for the purpose of determining the weight, credibility, and effect to be given to any incriminating statements alleged to have been made by the defendant.

Soriano testified at trial. He denied making J.B. watch pornography and denied touching her. When asked why he had made admissions to Detective Hill, Soriano testified:

Because my wife insisted, she insisted that I had done these things. She put it in my head that I had done these things, and I hadn't done anything. She was upset and thought—and now she doesn't think the same thing. She thought that I had done them, but now she doesn't think that. She believed the girl and now she doesn't think the same.
. . . .
Because they put that in my head. I haven't done anything. And besides that, I wasn't able to answer the questions that the detective asked me very well. I don't speak English.

. . . .
Q. You talked to [Detective Hill] about another personality. Why did you tell him that?  A. Because when I'm sick, I'm not the same person.  I'm not a nice person, a person who is attentive to my children and my wife.  When I'm sick I don't worry about them. I'm not the same person.
Q. Do you have a second personality that did these things with [J.B.]?  A. No.
Q Why did you tell the detective that you did?  A. Because at that time I wasn't—I wasn't well.  I didn't have my five senses together.  I was taking medicine.

The jury found Soriano guilty of lascivious acts with a child and child endangerment.  The district court sentenced him to terms of imprisonment on both counts the sentences were to be served concurrently.  Soriano appeals.

*A. Motion to Suppress.*  Soriano moved to suppress his statements (1) made on the telephone to Crouse and (2) in the interview with Detective Hill at the police station after he acknowledged his *Miranda* rights and waived them.  He claims that his statements were not voluntarily made, noting he was subject to a mental health treatment order.

"The burden of proof is on the State to prove by a preponderance of the evidence that [a] defendant's waiver and confession were made knowingly, voluntarily, and intelligently."  *State v. Davidson*, 340 N.W.2d 770, 771 (Iowa 1983) (internal citations omitted); *accord State v. Payton*, 481 N.W.2d 325, 328 (Iowa 1992).  "The burden must be met by a preponderance of the evidence, not beyond a reasonable doubt.  We give considerable weight to the findings of the trial court on the question of voluntariness."  *Payton*, 481 N.W.2d at 328 (citations omitted).

A number of factors help in determining voluntariness. Among them are: defendant's age, whether defendant had prior experience in the criminal justice system, whether defendant was

under the influence of drugs, whether *Miranda* warnings were given, whether defendant was mentally "subnormal," whether deception was used, whether defendant showed an ability to understand the questions and respond, the length of time defendant was detained and interrogated, defendant's physical and emotional reaction to interrogation, whether physical punishment, including deprivation of food and sleep, was used.

*Id.* at 328-29 (citations omitted).

Upon our de novo review and evaluation of the totality of the circumstances present here, *see State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011), we conclude Soriano's statements were voluntarily, knowingly, and intelligently given. We adopt the trial court's comprehensive analysis and well-reasoned conclusions (some language of which we have quoted above). Soriano's mental health hospitalization, while relevant to the analysis, was but one factor to be considered. *See Davidson*, 340 N.W.2d at 773 (finding that "mental subnormality does not itself deprive a waiver or confession of voluntariness"). We also observe his ability to understand the questions and respond while on psychiatric medication was evidenced by the audio recording of the interview with Detective Hill. The short interview was conducted politely and efficiently. Detective Hill was not threatening. Despite Soriano's later assertions, the interview was not hindered by a language barrier. We note, too, that Soriano's wife testified both English and Spanish were spoken in their home.

**B. Sentencing.** Soriano contends the court should have followed the recommendation contained in the presentence investigation report—that is, order that he be placed on probation subject to a plan of treatment and given approximately three months to accept full responsibility for the offenses, and if he failed to take responsibility for the offenses or failed in any way to follow through

on his treatment, the department of corrections would have the opportunity to file a report of probation violation.

Sentencing decisions are reviewed for an "abuse of discretion or defect in the sentencing procedure." *State v. Hopkins*, 860 N.W.2d 550, 553 (Iowa 2015). "An abuse of discretion will only be found when a court acts on grounds clearly untenable or to an extent clearly unreasonable." *Id.* (citation omitted).

We cannot say the district court abused its discretion here. The State recommended a term of imprisonment, pointing out Soriano was no longer acknowledging his actions against the child. The court carefully considered the relevant factors in imposing sentence, including Soriano's refusal to accept responsibility for his actions, which was of great import to the presentence investigation preparer's recommendation. In fact, the court took a break to consider the sentencing options. We find no abuse of the court's discretion here. We therefore affirm.

**AFFIRMED.**