# IN THE COURT OF APPEALS OF IOWA

No. 17-1188
Filed September 12, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ROGELIO PABLO MORALES,**
    Defendant-Appellant.
_____


    Appeal from the Iowa District Court for Woodbury County, Jeffrey L.

Poulson, Judge.


    Rogelio Morales appeals from the denial of his motion to suppress.

**AFFIRMED.**



    Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant

Appellate Defender, for appellant.

    Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant

Attorney General, for appellee.



    Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, Chief Judge.**

Rogelio Morales was convicted of second-degree murder.  He appeals from the denial of his motion to suppress statements he made to police officers.  Under the totality of the circumstances, we find Morales knowingly and voluntarily waived his *Miranda* rights.[1]  We affirm.

On April 19, 2015, Sioux City Police Officer Joshua Tyler was dispatched on a report of an unconscious party.  Upon his arrival, Officer Tyler found Officer William Enockson administering CPR to Margarita Morales.  Officer Tyler then was advised by a bystander he should speak with Rogelio Morales.  Officer Tyler approached Morales, who was sitting on the front steps of the house and crying.  Officer Tyler asked Morales what had happened.  Morales replied that he and Margarita had been arguing and Margarita had said she had slept with someone else.  Morales told Officer Tyler he had "lost it" and blacked out.  After speaking with Morales, Officer Tyler placed him into custody.  During the walk to the patrol car, Officer Tyler read Morales his *Miranda* rights.

Morales was placed into an interrogation room at 1:06 a.m.  Detectives Nick Thompson and Mike Simons entered the room at 2:22 a.m.  Detective Thompson read Morales his *Miranda* rights and asked Morales if he understood those rights.  Morales slightly nodded affirmatively.  Detective Thompson then asked if he was willing to speak to the detectives.  Morales again affirmatively nodded.  The detectives questioned Morales for about an hour and a half.  Morales answered the detectives' questions without asking to stop or speak to an attorney.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).

Morales was charged with first-degree murder after Margarita died. In district court, Morales moved to suppress the video of the custodial interrogation, arguing there was no showing by the State he voluntarily and knowingly waived his *Miranda* rights. He asserted the video shows that after being read his *Miranda* rights, Morales made a minor head gesture and no verbal affirmative statement. No express written or verbal waiver was obtained by the detectives before they questioned him.

After a hearing, the district court found:

> Morales responded to questions of both his understanding of his *Miranda* rights and his willingness to speak to the detectives with a nod. This is clearly seen in the video of the interview. Detective Thompson delivered the rights and questions in a conversational tone. There were no threats or promises or intimidation in the conversation. Morales had his head down during the recitation and questions, but there was no indication that he not listening or was confused. He responded to questions in a logical manner at the appropriate times without prompting. Finally, Morales offers no alternative explanation to contradict the nods being interpreted as affirmative responses to Detective Thompson's questions.
>
> Morales cites several additional factors that he argues diminish his ability to knowingly, intelligently, and voluntarily waive his *Miranda* rights, including his age, his military service, his lack of a prior criminal record, the location of the interview, the length of wait prior to interrogation, the length of interrogation, the number of law enforcement officers present, his emotional state, deprivation of sleep, and the detectives' request that he disrobe. When evaluating the totality of the circumstances, the court does not find these persuasive. Morales presents no evidence to support how these factors might have altered his ability to understand or waive his *Miranda* rights. Several of these, in fact, occurred after Morales's waiver, including the length of the interrogation and the detectives' request that he disrobe. None of these factors alter Morales's knowing, intelligent, and voluntary waiver of his *Miranda* rights.

On appeal, Morales argues the Iowa Constitution requires an express waiver of a suspect's rights before he may be subjected to custodial interrogation. He asks that we overrule *State v. Davis*, 304 N.W.2d 432, 435 (Iowa 1981) ("We

hold an express waiver is not a requirement of the Iowa Constitution. Thus we must examine this defendant's words and actions, after he was informed of his *Miranda* rights, to determine if in fact a waiver occurred."). As has been noted before, the task of overruling precedent is for our supreme court. *See State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("While we reverse the judgment of the district court and vacate the decision of the court of appeals, we acknowledge both courts properly relied on our applicable precedent. Generally, it is the role of the supreme court to decide if case precedent should no longer be followed."); *State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves."); *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

The standard of review of a motion to suppress based on federal and state constitutional grounds is de novo. *State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007). We make "an independent evaluation of the totality of the circumstances based on the entire record." *Id.* (citation omitted). We give deference to the trial court's factual findings, especially because of its opportunity to assess witness credibility, but we are not bound by those findings. *Id.* Our review includes evidence produced at the suppression hearing and the trial. *State v. Gaskins*, 866 N.W.2d 1, 5 (Iowa 2015).

"*Miranda* holds that a defendant may waive the rights effectuated in the warnings only if the waiver is made voluntarily, knowingly and intelligently." *State v. King*, 492 N.W.2d 211, 214 (Iowa 1992).

> If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.

*Miranda*, 384 U.S. at 444-45.

"The burden is on the State to prove by a preponderance of the evidence that defendant's waiver of his *Miranda* rights was made knowingly, voluntarily and intelligently." *King*, 492 N.W.2d at 214.

> This inquiry has two dimensions: "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).
>      However, an express waiver is not required. [*Davis*, 304 N.W.2d at 435]. Rather, the validity of the waiver is to be based on particular facts and circumstances surrounding the giving of the *Miranda* warnings.

*Id.* Our supreme court has indicated "[a] number of factors help in determining voluntariness." *State v. Payton*, 481 N.W.2d 325, 328 (Iowa 1992).

> Among them are: defendant's age; whether defendant had prior experience in the criminal justice system; whether defendant was under the influence of drugs; whether *Miranda* warnings were given; whether defendant was mentally "subnormal"; whether deception was used; whether defendant showed an ability to understand the questions and respond; the length of time defendant was detained and interrogated; defendant's physical and emotional reaction to interrogation; [and] whether physical punishment, including deprivation of food and sleep, was used.

*Id.* at 328-29 (citations omitted).

Here, the totality of the circumstances demonstrate that Morales made a knowing and voluntary waiver of his rights. He was twice informed of his *Miranda* rights. The first time Morales was informed of his rights was by Officer Tyler on the way to his patrol car. Officer Tyler testified he asked Morales if he understood his rights and Morales "acknowledged by two forms. One was basically a head nod gesture, and the other was simply yes." According to Officer Tyler, Morales did not appear to be under the influence of any substances, gave the officer logical answers or explanations to questions, and appeared to understand the situation. The second time Morales was given the *Miranda* warnings was by Detective Thompson at the police station. Detective Thompson testified that he then asked Morales if he understood his rights and if he was "okay with talking." Morales "gave an affirmative head nod to both of the questions indicating to me that he did understand."

Morales indicated he understood those rights. He talked with the offficers after being advised he was not required to make any statements. *See State v. Mann*, 512 N.W.2d 528, 534 (Iowa 1994) ("Mann's voluntary decision to talk to the officer may clearly be implied from the fact that he did so after being advised that he was not required to.").

Evidence that Morales knew and understood his rights is also supported by his age and experience: he had been a Marine from 2006 to 2014 and was honorably discharged. He was not discharged for physical disability or injury. Morales was twenty-eight years old on April 19, 2015, and attending college full-time. Less than two weeks before this incident, Morales gave a statement to law enforcement officers after being advised of, given a written copy of, and signing a

written waiver of his *Miranda* rights. The officer in that transaction testified at the hearing on the instant motion to suppress, stating Morales had no difficulty understanding the English language or answering the officer's questions and that Morales's responses were appropriate to the questions asked. Officer Tyler's observations of Morales's ability to understand and respond were similar to the other officer. Morales was in custody for about two hours before he was questioned by the detectives. The video shows Morales with his head resting in his arms for much of this time period. The detectives questioned Morales for about two hours. The video shows Morales was emotional and depressed but he answered the detectives' questions in a coherent manner. We agree with the district court that Morales's nods and subsequent action in answering questions were sufficient to indicate a knowing and voluntary waiver of his *Miranda* rights. We therefore affirm.

**AFFIRMED.**