# IN THE COURT OF APPEALS OF IOWA

No. 22-0945
Filed September 27, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RYAN SCOTT DEVORE,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi

Ackley, Judge.

Ryan Devore appeals his conviction for sexual abuse in the third degree.

**AFFIRMED.**

Daniel A. Dlouhy of Dlouhy Law, P.C., East Dubuque, Illinois, for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney

General, for appellee.

Considered by Greer, P.J., Chicchelly, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**GAMBLE, Senior Judge.**

Ryan Devore appeals his conviction for third-degree sexual abuse. He challenges the sufficiency of the evidence or alternatively seeks a new trial based on juror bias. We affirm.

**I. Background Facts and Prior Proceedings**

From the evidence presented at trial, a jury could have found the following facts. In 2016, twelve-year-old J.M. went to Devore's apartment to babysit the infant Devore shared with J.M.'s relative. J.M.'s relative left the apartment, leaving J.M. alone with the infant and Devore. Devore and J.M. rough housed, and Devore began to tickle J.M., causing her to fall on to the couch. Then Devore touched J.M.'s thigh, slid his hand up her thigh, and digitally penetrated her vagina. He pulled her shorts down and inserted his penis into her vagina. Devore stopped when he heard a loud noise and left the apartment, leaving J.M. alone with the crying baby. J.M.'s uncle, who lived across the hall, came over to see why the baby was still crying. He found J.M. crying and shaking, though he did not know the cause of her distress.

J.M. did not immediately disclose the assault, but her mother noticed J.M. would try to avoid Devore; his paramour, her relative; and their family from that point on. And J.M.'s uncle found J.M. to be different since that day and noticed she stopped caring about seeing her family. J.M. eventually told her friend what happened but begged her friend not to tell anyone. Later, she told her uncle what happened but again insisted that he not tell anyone.

Then a friend of J.M.'s took her own life after being sexually assaulted. Concerned about J.M. following the loss of her friend, J.M.'s mother took J.M. to

see a therapist. At her first session with the therapist, J.M. disclosed that Devore had assaulted her. The therapist urged J.M. to tell her parents, and she did. Then the therapist reported the abuse, which prompted the criminal investigation into Devore.

The State charged Devore with sexual abuse in the third degree. The matter proceeded to trial. During jury selection, the court identified people involved with the case and asked potential jurors if they had any connection to any involved individual. Several potential jurors noted some connection. Potential juror B.W., who eventually became a member of the jury, did not disclose any connection to an individual associated with the case. At trial, several people testified for the State, including J.M. and her mother. Devore's paramour, J.M.'s relative, testified for the defense. The jury found Devore guilty as charged.

Devore filed a motion for new trial claiming juror B.W. and Devore's paramour "used to be friends until they had a falling out and haven't talked since" and juror B.W.'s mother "worked and kind of hung out with" J.M.'s mother. Devore did not provide any supporting testimony or evidence from his paramour, J.M's mother, or juror B.W. The district court denied the motion for new trial and sentenced Devore.

Devore appeals claiming his conviction is not supported by sufficient evidence or alternatively that he is entitled to a new trial based on juror bias.

## II. Discussion

### A. Sufficiency of the evidence

We begin with Devore's challenge to the sufficiency of the evidence because success on this claim would require us to remand for judgment of acquittal

and end our inquiry. We review challenges to the sufficiency of the evidence for corrections of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). Guilty verdicts must be supported by substantial evidence, which is "that upon which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010) (citation omitted). While we consider all evidence, we view it in the light most favorable to the State. *Id.* So "[e]vidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *State v. Lacey*, 968 N.W.2d 792, 800–01 (Iowa 2021) (citation omitted).

"A person commits sexual abuse in the third degree when the person performs a sex act . . . [and] the act is between persons who are not cohabitating as husband and wife and . . . the other person is twelve or thirteen years of age." Iowa Code § 709.4(1)(b)(2) (2016). The marshaling instruction required the jury find:

> 1. During the fall of 2016, the defendant performed a sex act[1] with J.M.
> 2. The defendant performed the sex act while J.M. was under 14 years of age.

---

[1] The jury instructions defined "sex act" as
> any sexual contact between two or more persons by any of the following:
> 1. Penetration of the penis into the vagina or anus.
> 2. Contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person.
> 3. Contact between the finger or hand of one person and the genitalia or anus of another person.
> 4. Ejaculation onto the person of another.
> 5. By use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

3. The defendant and J.M. were not then living together as husband and wife.

Devore objected to the phrasing of element two of the marshaling instruction at trial but does not renew his challenge on appeal, so we treat the instruction as the law of the case of purposes of reviewing the sufficiency of the evidence on appeal. *See State v. Rethwisch*, No. 22-0530, 2023 WL 5607147, at *3 (Iowa Ct. App. Aug. 30, 2023). Devore does not specifically challenge the sufficiency of the evidence supporting any particular element of the offense; instead he contends his conviction cannot stand because the State provided no physical evidence and the State's witnesses were not credible.

We first address Devore's complaint about the lack of physical evidence by reiterating physical evidence is not required to support a sexual abuse conviction. *See, e.g.*, *State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) ("We find that the alleged victim's testimony is by itself sufficient to constitute substantial evidence of defendant's guilt. . . . This court has held that a rape victim's accusation need not be corroborated by physical evidence."); *see also* Iowa Code § 709.4 (making no reference to a physical-evidence requirement); *State v. Trane*, 934 N.W.2d 447, 455 (Iowa 2019) ("Here, the jury heard K.S. testify that Trane repeatedly and forcibly inserted his finger in her vagina and repeatedly grabbed her hand and put it over his groin area. K.S.'s testimony, standing alone, is sufficient to support Trane's conviction on [the assault with intent to commit sexual abuse] count.").

As to the credibility of the State's witnesses, it was for the jury to determine their credibility. And crediting the State's witnesses, there was sufficient evidence establishing each element of the offense. Devore highlights J.M.'s delayed

reporting as though it supports his contention that she was not a credible witness. But there is nothing inherently suspicious about a victim of sexual abuse, particularly a child victim, delaying reporting. *C.f. State v. Payton*, 481 N.W.2d 325, 327 (Iowa 1992) (referencing expert testimony on "delayed reporting syndrome").

Devore notes J.M.'s testimony was contradicted by his only witness, his paramour, when she stated she would not have had J.M. care for her infant at the time J.M. stated Devore assaulted her while babysitting because the infant was too young to leave with a twelve year old. But the jury was free to find the paramour's testimony not credible and instead believe J.M.'s version of events. And to the extent Devore argues J.M.'s testimony was not consistent with her uncle's, he misses the mark. Their testimony was actually consistent once J.M. clarified when she disclosed the assault to her uncle.

And assessing each element of the offense, each is supported by sufficient evidence. J.M. testified that Devore inserted both his finger and penis into her vagina. The testimony established J.M. had turned twelve just before the assault. And the evidence established J.M. and Devore were not living together as husband and wife. So all elements of the offense were satisfied.

Concluding Devore's conviction is supported by sufficient evidence, we move on to Devore's second claim.

**B. Juror Bias**

With respect to claims of juror bias, our standard of review is unsettled. Our supreme court has long said "[w]e review a denial of a motion for new trial based on . . . juror bias for an abuse of discretion." *State v. Webster*, 865 N.W.2d 223,

231 (Iowa 2015). However, more recently, our supreme court has recognized the constitutional implications of a juror bias claim may warrant de novo review but has not announced which standard of review should apply—instead concluding the particular claims before it would fail under either standard. *State v. Liggins*, 978 N.W.2d 406, 415, 417 (Iowa 2022); *State v. Christensen*, 929 N.W.2d 646, 647–48 (Iowa 2019); *see also State v. Spates*, No. 21-0327, 2022 WL 1232636, at *3 (Iowa Ct. App. Apr. 27, 2022). We also sidestep any declaration as to the current standard of review for juror bias claims as Devore would be unsuccessful under either standard.

Iowa Court Rule 2.24(2)(b)(9) permits the court to grant a new trial when "the defendant has not received a fair and impartial trial." Devore claims implied bias arose from juror B.W.'s inclusion in the jury and prevented him from receiving a fair and impartial trial necessitating a new trial. "Implied bias arises when the relationship of a prospective juror to a case is so troublesome that the law presumed a juror would not be impartial." *Webster*, 865 N.W.2d at 236. "Implied bias has been found to arise, for instance, when a juror is employed by a party or is closely related to a party or witness." *Id.* Devore has failed to establish any such relationship here to warrant a presumption of bias or implied bias. Devore never called juror B.W., his paramour, or J.M.'s mother, to provide any information about their past relationships or any prior interpersonal conflicts. Instead, all we have to go on is a statement (1) about where J.M.'s mother's business was located relative to another business—no context is provided to explain why that information would be relevant; (2) that J.M.'s mother "worked and kind of hung out with [juror B.W.]'s mom; and (3) juror B.W. and Devore's paramour "used to be friends until

they had a falling out and haven't talked since." Devore's counsel did explain at the hearing on the motion that Devore's paramour and juror B.W. "played together as children" and "at some point, they did have a falling out." But that sparse explanation provides little to provide context about how long they were friends, at what point they fell out, and the seriousness of their rift. Without more, we do not have enough information to allow us to conclude juror B.W. had a relationship with any witness so troublesome that it would prevent juror B.W. from being fair and impartial.

Accordingly, we affirm the district court.

**AFFIRMED.**