# IN THE COURT OF APPEALS OF IOWA

No. 23-0617
Filed October 30, 2024

**JOHN JAMES BERWANGER,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Kellyann M. Lekar, Judge.

The defendant appeals the denial of his application for postconviction relief. **AFFIRMED.**

Matthew L. Noel of Noel Law Office, Dubuque, for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee State.

Considered by Tabor, C.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

Pointing to many claimed deficiencies related to his trial counsels' performance,[1] John Berwanger applied for postconviction relief (PCR). Narrowing the list on appeal, Berwanger alleges that his trial counsel was ineffective by not impeaching the child complainant, N.W.K., during the child's trial testimony and not objecting to the State's expert's testimony that Berwanger believes constituted vouching. We find his claims meritless and affirm the denial of the PCR application.

## I. Background Facts and Proceedings.

The facts developed at trial were set out in Berwanger's direct appeal of his conviction for second-degree sexual abuse[2]:

> After drinking heavily at his friends' home, Berwanger told them he was a "monster" for something he had done. Crying, Berwanger said N.W.K.'s father would "kill him if [he] found out what he did, and he did something he shouldn't have." Pressed for more information, Berwanger offered no other details. The friends chalked it up to the alcohol. After the friendship deteriorated for other reasons and Berwanger was told not to come around anymore, Berwanger messaged the ten-year-old [N.W.K.] on her tablet saying something to the effect of: "Sorry I'm going to miss another birthday. If you ever want to find me, you can find me at my mother's house when you're older." N.W.K.'s mother found this contact suspicious and asked her daughter if Berwanger ever did anything to her. The child hung her head. Because they were very close, her grandmother intervened and asked N.W.K. if anything happened. The child answered yes and an investigation began. In an interview with child-protection professionals, N.W.K. disclosed that Berwanger touched her "private" and that it had occurred more than once. The child also described an instance where Berwanger attempted to make her touch his pants in the area of his penis but she pulled her hand away. She quoted Berwanger as telling her "don't tell anybody" and "if you were ten years older I would marry you."

---

[1] Two attorneys served as Berwanger's trial counsel.
[2] Berwanger was acquitted of two other charges: enticing a minor under thirteen and lascivious acts with a child.

*State v. Berwanger,* No. 20-0942, 2021 WL 2453982, at *1 (Iowa Ct. App. June 16, 2021) (first alteration in original). Berwanger filed a direct appeal, and we upheld his conviction of second-degree sexual abuse and preserved his ineffective-assistance-of-counsel claim for PCR proceedings.[3] *Id.* at *6. After a hearing on Berwanger's ineffective-assistance-of-counsel claims, the PCR court denied his application. Berwanger appeals from that denial.[4]

**II. Standard of Review.**

Although we generally review PCR actions for legal error, we review ineffective-assistance claims involving trial counsel de novo because they are constitutional claims. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). A claim of ineffective assistance of trial counsel is rooted in the constitutional right to counsel, protected under the Sixth Amendment. *State v. Gines*, 844 N.W.2d 437, 440 (Iowa 2014).

**III. Discussion.**

The two-prong test used to evaluate ineffective assistance of counsel requires a showing that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984). To establish ineffective assistance of counsel, Berwanger must prove both

---

[3] On direct appeal, Berwanger challenged the sufficiency of the evidence, alleged errors in a jury instruction defining "sex act," and allowing a late amendment to the trial information after the parties rested their case. *Berwanger*, 2021 WL 2453982, at *2–5.

[4] The State asserts that Berwanger's "manner of briefing" in this appeal waives his challenges before us. Particularly, the State notes that Berwanger failed to provide citations to the record and discusses facts not in the record. *See* Iowa R. App. P. 6.903(2)(g)(3). We admonish counsel for these deficiencies but decide to address these claims on the merits.

that "in light of all the circumstances," his counsel acted outside the realm of a "professionally competent" attorney and but for trial counsel's errors, there would be a reasonable probability of a different outcome at trial. *See id.* "The likelihood of a different result must be substantial, not just conceivable." *State v. Ambrose*, 861 N.W.2d 550, 557 (Iowa 2015).

### A. Failing to Impeach the Child Witness.

To show that Berwanger's trial counsel did not act as reasonably competent attorneys, Berwanger must show that trial counsels' actions went beyond misguided trial strategy. *See Ledezma v. State*, 626 N.W.2d 134, 147 (Iowa 2001).

The PCR court found that Berwanger's two trial attorneys did not breach an essential duty by not impeaching the child victim with the other statements previously made—both in the deposition and in the Child Protection Center (CPC) interview, which was played at trial. Addressing this challenge, the PCR court "[r]ecogniz[ed] that pressing a complaining witness in a sexual abuse case, especially a minor, can backfire with a jury and [it] also runs the risk of solidifying the witness's testimony rather than poking holes in it[, so it] is a reasonable trial strategy." And as the PCR court observed, this was not a simple "he said/she said" case because Berwanger made incriminating statements to the child's father, so the trial strategy had to include the impact of those comments.

To support his allegations, Berwanger contends his trial counsel admitted making a mistake, rather than making a judgment call, not to use the transcripts to impeach the child victim. So unlike the cases where the decision is made not to impeach a child as a strategy, Berwanger argues his trial counsel wanted to impeach the child witnesses but instead did not perform within the range of

reasonable professional representation because counsel misunderstood how to present the inconsistencies to the jury. Indeed, one of the trial counsel testified he had a mistaken belief that the judge was going to let Berwanger introduce the transcript from the child's deposition as an exhibit. Because that was not allowed, trial counsel suggested that he could not get into the inconsistencies "to the extent I had hoped." But trial counsel also cautioned that he was "worried too much about having the [child] up there too long and sort of getting the jury compassionate, on the [child's] side, being too aggressive with her." The other trial counsel voiced a similar concern in his PCR testimony.

During the underlying trial, counsel attempted several times to get the child's deposition testimony into the record. Before the trial began, the trial court and counsel batted around various solutions to presenting the deposition inconsistencies and at one point, the trial court noted it might consider having parts of the deposition read into the record. Berwanger's trial counsel attempted to introduce the inconsistent statements in a manner that would not involve a vigorous cross-examination of the child and took the court's statements about possibly allowing parts of the deposition as a given. After the State rested and trial counsel produced parts of the transcript they wanted to read from the child's deposition testimony; the trial court had this exchange:

> COURT: I guess at this point in time, I'll ask is there any reason that you couldn't have asked her that question or attempted to impeach her based on her deposition testimony when she testified live?
>
> TRIAL COUNSEL: Yes. Because [N.W.K.]'s testimony at that point, Your Honor, was "I don't remember anything, I can't give you any details," and frankly, when you have a ten-year-old in front of a jury, you're not going to get very far by going over deposition transcripts.

But in the end, the trial court denied trial counsels' request.

Even so, Berwanger set out the inconsistencies between the child's trial testimony, statements made in the CPC interview, and the deposition taken of the child as follows:[5]

|  | Time of Year | Clothing | Skin vs. over the clothes | Brother's location | Brother's activities | Berwanger asking her to touch him |
|---|---|---|---|---|---|---|
| CPC | "snowy" | Capris | Skin | On the couch | Fortnite | Yes |
| Deposition | June | Leggings/shorts | Over the clothes | On the floor | Minecraft | No |
| Trial Testimony | Unknown | Leggings | Over the Clothes | On the floor | Movie | No |

Thus, the inconsistencies between the deposition and trial testimony were not likely game-changing because Berwanger could use the inconsistencies from the CPC interview compared to trial testimony, which reflected differences Berwanger wanted to highlight. And trial counsel did just that in the closing argument. So even if we were to find that trial counsel failed to perform an essential duty by failing to impeach the child with the deposition testimony, that error was not prejudicial. To determine whether prejudice exists we "consider the totality of the evidence, what factual findings would have been affected by counsel[s'] errors, and whether the effect was pervasive or isolated and trivial." *State v. Maxwell*, 743

---

[5] Berwanger's counsel provided the following chart in a trial brief he filed in support of Berwanger's PCR application.

N.W.2d 185, 196 (Iowa 2008) (citation omitted). Here, we cannot find that the additional record related to the inconsistencies in the deposition testimony would have changed the result of the trial, so Berwanger fails to meet his burden on the impeachment-challenges claim of ineffective assistance.

### B. Failing to Object to Expert Testimony of Vouching.

Berwanger's counsel anticipated the possibility of vouching testimony from the State's expert witness, a CPC interviewer. Vouching implies that the expert is "directly or indirectly . . . giving his or her scientific certainty stamp of approval on the testimony even though an expert cannot accurately opine when a witness is telling the truth." *State v. Dudley*, 856 N.W.2d 668, 677 (Iowa 2014). Before trial, Berwanger filed a motion to exclude testimony, asking the court to exclude the State's expert "from making any comments regarding the veracity or 'truthfulness' of the accuser's testimony." The district court granted the motion. During the expert's testimony, trial counsel did not object to any testimony from the State's expert witness.

Berwanger argues that there are six instances of impermissible testimony that "crossed the line." And, as trial counsel did not object to that testimony as vouching, Berwanger argues his counsel acted outside the realm of professional conduct, constituting ineffective assistance of counsel. Of the six examples raised by Berwanger, we find four of those mentioned were general statements about how children behave.[6] Two of the examples come closer to crossing the line. *See*

---

[6] Berwanger points to the expert's statements that (1) when abused multiple times, children generalize what's happened to them rather than being able to talk about a specific event or all of the specific details; (2) she would not expect a child abused multiple times to remember the details of each incident; (3) it is common for

*State v. Payton,* 481 N.W.2d 325, 327 (Iowa 1992) ("On the improper side of the line would be 'expert testimony that either directly or indirectly renders an opinion on the credibility or truthfulness of a witness.'" (citation omitted)).

As a review, *Dudley* confirmed that "experts will be allowed to express opinions on matters that explain relevant mental and psychological symptoms present in sexually abused children." 856 N.W.2d at 676 (citation omitted). Yet, experts do not have unfettered leeway to opine in child sex abuse cases. This court has summarized the bounds of permissible testimony as follows:

> [T]he expert may assist the jury by providing specialized knowledge about how children react to trauma, but it is for the jury to determine whether the complaining witness's behavior conforms to . . . generalities. For the expert to opine that the child's behavior is consistent with the behavior of children who have been sexually abused impermissibly vouches for the child's credibility.

*State v. Barnhardt*, No. 17-0496, 2018 WL 2230938, at *3 (Iowa Ct. App. May 16, 2018), *abrogated on other grounds by State v. Kraai*, 969 N.W.2d 487, 495–96 (Iowa 2022).

Here, the expert asserted that, generally, children may give inconsistent statements, may not remember details, may delay their disclosure of abuse, or may generalize their abuse. *Dudley*, as well as its progeny, allow experts to provide testimony that "assists the jury in reaching its verdict," but not "testimony that conveys to the jury that the child's out-of-court statements and testimony are credible." 856 N.W.2d at 677; *see also State v. Tyler*, 867 N.W.2d 136, 163–66 (Iowa 2015); *State v. Mall*, No. 21-1612, 2023 WL 4759446, at *2–4 (Iowa Ct. App.

---

children to make inconsistent statements during an interview; and (4) delayed disclosure is very common. These were all responses to questions framed as to children generally.

July 26, 2023). In the instant case, the State's expert witness did not cross the threshold of commenting on the child's credibility, rather, she provided valuable information that is *relevant* to a child's reaction, demeanor, or behavior when subjected to a sexual abuse trauma. *See generally State v. Jaquez*, 856 N.W.2d 663, 666 (Iowa 2014) ("We allow an expert witness to testify generally that victims of child abuse display certain demeanors."). Relevant testimony is not the same as vouching testimony.

But as noted by the State, there were instances where the expert's answers came close to "crossing the line" of vouching, which involve the other two statements raised by Berwanger. In response to a question of whether it is more common or less common for a child to be abused by someone they know versus a stranger, the expert witness said, "I think a statistic I heard is 90 percent of the time [the child knows the perpetrator]." Berwanger's counsel objected, saying "[W]e've got a hearsay issue, a statistical issue. I would object to any further answer on that question." The district court directed the State to ask another question, but the question involved the same topic. And the expert witness responded, "It's more common that it's somebody they know." Thus, there was an effort by trial counsel to restrict the expert witness testimony related to the statistic. *See Mummau v. State*, No. 16-1909, 2017 WL 3525294, at *2 (Iowa Ct. App. Aug. 16, 2017) (rejecting applicant's claim trial counsel breached an essential duty regarding alleged vouching testimony when counsel did object but was not successful in keeping the evidence from being introduced).

"It is well-established in Iowa that expert witnesses are prohibited from providing statistics suggesting children do not lie about sexual abuse." *State v.*

*Tjernagel*, No. 15-1519, 2017 WL 108291, at *9 (Iowa Ct. App. Jan. 11, 2017); *see also id.* (finding statistics about how likely and at what age "most" children who are victims of sexual abuse disclose the abuse, such as "most children do not tell right away" were not comments on whether children lie about sexual abuse). Here, like in *Tjernagel*, the comment about 90% of children knowing the perpetrator did not go to the child witness's credibility. Likewise, the comments were not about a child's general behavior but addressed a statistic about the general perpetrator's characteristics.

And we do not look at these statements in a vacuum. Leading up to this testimony, the State's expert opined that generally delayed reporting is common in children because of fear—fear of breaking up the family or fear of having to be moved to a foster family. *See State v. Royce*, No. 12-0574, 2013 WL 5508428, at *3 (Iowa Ct. App. Oct. 2, 2013) (noting general testimony about the effect on the family, the relationship with the perpetrator, and threats of power or control went to the mental state of child sex abuse victims and help explain why reporting is delayed). It follows that fear would be more prevalent if the child knows the perpetrator and, thus, the opinion explained a relevant mental and psychological symptom present in sexually abused children–leaving it on the "proper side of the line." *See Payton*, 481 N.W.2d at 327 (finding testimony explaining delayed disclosure and why a child might wait to disclose was "highly probative"). In *State v. Howland*, our court found the line was not crossed when the expert generally discussed delayed reporting as "common for the abuse victim to be willing to be around the abuser, especially if the abuser plays a disciplinary role in the child's life." No. 22-0519, 2023 WL 3613259, at *4 (Iowa Ct. App. May 24, 2023). And

even though this general behavior coincided with the specifics of the case details, there was no abuse of discretion found in admitting that expert testimony. *Id.* All of this leads us to conclude the discussion of a statistic related to a known perpetrator went to general behavior of a child related to delayed reporting—not vouching for the witness's credibility. *See Simpson v. State*, No. 15-1529, 2017 WL 1735615, at *4–5 (Iowa Ct. App. May 3, 2017) (finding testimony citing a statistical reference that "about 86 percent of adolescents who have been sexually abused do not tell right away" focused on delayed reporting not on false allegations).

On top of that, the State's expert did not vouch for this child's truthfulness and did not specifically address N.W.K.'s situation or whether the child had been abused. Here, the issue for the jury to decide was not whether N.W.K. knew the perpetrator or whether the acts were performed by a stranger. Instead, the jury had to determine whether N.W.K.'s testimony about Berwanger's sexual abuse of her was truthful. And as to the statistic offered, it was general information to explain delayed reporting. This testimony was minimal and still left for the jury to determine whether N.W.K. was truthful about the sexual abuse she described.

As the State's expert witness's testimony did not rise to the level of vouching, we find that Berwanger failed to prove trial counsel breached an essential duty. Additionally, we note that Berwanger did not address the prejudice prong. But we conclude the evidence of Berwanger's guilt was persuasive, so there is not a reasonable probability Berwanger would not have been convicted without the expert's complained-of testimony. Berwanger has also failed to establish the prejudice element of his ineffective-assistance-of-counsel claim.

**IV. Conclusion.**

We affirm the denial of Berwanger's PCR application.

**AFFIRMED.**